# 𝔚𝔥𝔢𝔢𝔩𝔦𝔫𝔤.

## GOSHORN'S EX'R v. SNODGRASS et al.

### Decided April 30, 1881.

1. One, who purchases from a fraudulent grantee with notice of the fraud and of the invalidity of his title, can acquire no better right than the fraudulent grantee has. He cannot be protected as a *bona fide* purchaser, but must stand in the shoes of his grantor.

2. The proposition, that "fraud must be proved and not presumed," is to be understood only as affirming, that a contract honest and lawful on its face must be treated as such, until it is shown to be otherwise by evidence either positive or circumstantial. Fraud may be inferred from facts calculated to establish it.

3. If the facts established afford a sufficient and reasonable ground for drawing the inference of fraud, the conclusion, to which the proof tends, must in the absence of explanation or contradiction be adopted.

4. A deduction of fraud may be made not only from deceptive assertions and false representations, but from facts, incidents and circumstances, which may be trivial in themselves but may in a given case be often decisive of a fraudulent design.

5. Although a deed be made for a valuable and adequate consideration, yet if the intent of the grantor, with which it is made, be dishonest or unlawful, the deed will be deemed fraudulent, if the grantee had notice of such intent.

6. Though the proof of fraud rests on the party who alleges it, circumstances may exist to shift the burden of proof from the party impeaching the transaction on to the party upholding it.

7. The statute for the prevention of frauds has been universally considered as an exposition of the common law and was intended to avoid deeds contrived and devised fraudulently for the delaying and defrauding of creditors in those cases only, where both par-

17 717
34 104
34 185
34 706

17 717
35 553
35 734
36 281

17 717
37 13
37 702

17 717
38 260

1881
Spring
Special Term.

Goshorn's Ex'r
v.
Snodgrass.
et al.

17 717
40 542

17 717
41 386

17 717
43 328

17 717
44 412
45 667

17 717
46 391
46 624

17 717
47 723

17 717
48 231
f48 688

17 717
f50 206
50 681

17 717
j 52 602
j 52 607

17 717
53 63

17 717
55 497

17 717
f62 251
62 521

17 717
66 213
66 473

1881
Spring
Special Term.

Goshorn's Ex'r
v.
Snodgrass
et al.

ties participate in the fraud.    The grantor may intend a fraud, but if the grantee is a fair *bona fide* and innocent purchaser, his title is not to be affected by the fraud of his grantor.

8.  Under our statute of frauds, as well as the English statute of 13th Elizabeth, a *bona fide* purchaser for value having no notice of *covin* fraud, collusion, &c., will be protected.    To vitiate a conveyance, there must be a *fraudulent design* in the grantor and notice of that design in the grantee.

Appeal from four several decrees of the circuit court of the county of Ohio, rendered the first on the 24th day of November, 1871, the second on the 4th day of September, 1874, the third on the 15th day of May, 1875, and the fourth on the 18th day of April, 1876, in a cause in said court then pending, wherein William S. Goshorn, executor, &c., was plaintiff, and David Snodgrass and others were defendants, allowed on the petition of James L. Delaplain and others.

Hon. Thayer Melvin, judge of the first judicial circuit, rendered the decrees appealed from.

HAYMOND, JUDGE, furnishes the following statement of the case :

John Goshorn brought his suit in equity in the circuit court of the county of Ohio against the defendants on the 13th day of June, 1868, and at the same time an affidavit was made and filed in the cause as follows :

"STATE OF WEST VIRGINIA :    IN THE CLERK'S OFFICE OF THE CIRCUIT COURT OF OHIO COUNTY.

"*John Goshorn* v. *David Snodgrass et al.*—In chancery.

"WHEELING, W. VA., June 13, 1868.

"William S, Goshorn, a credible person, this day made oath before me, clerk of said court, that David Snodgrass is indebted to John Goshorn in the sum of $2,218.95, and that said claim is founded on two promissory notes now owned by said John Goshorn, one for $1,500.00, dated at Wheeling, W. Va., August 15, 1867, payable in three months after date to order of Peter Delaplain,

1881
Spring
Special Term.

Goshorn's Ex'r
v
Snodgrass
et al.

for value received, negotiable and payable at the Merchants National Bank of West Virginia, at Wheeling, signed by David Snodgrass, endorsed by Peter Delaplain and Andrew Mitchell, and duly protested at maturity for non-payment, protest $2.01 ; and the other note for $1,600.00, dated Wheeling, W. Va., July 17, 1866, payable in nine months after date to the order of David Snodgrass, for value received, negotiable and payable at the Merchants National Bank, at Wheeling, W. Va., signed Peter Delaplain, endorsed David Snodgrass and Samuel Snodgrass, and duly protested for non-payment at its maturity, protest cost, $2.01 ; credit endorsed, $1,012.00; received on the within note $1,012.00, December 26, 1867; that the said claim is just, and that there is present cause of action therefor, and that the affiant believes, that the plaintiff ought to recover the amount above claimed, $2,218.95; that the following grounds of attachment exist against the property of said David Snodgrass, viz., that said Snodgrass, defendant, is a non-resident of this State of West Virginia. All the facts upon which the plaintiff and the affiant rely to show the existence of the grounds upon which the plaintiff's application for the attachment on the property hereinafter set forth of defendant, are that the affiant has been informed by the relatives, resident in Ohio county, West Virginia, and by many other persons, that said David Snodgrass is a resident of the State of Delaware ; that affiant's own personal observations are, that the said David Snodgrass is a non-resident of this State of West Virginia ; that the said David Snodgrass has property and estate in Ohio county, West Virginia, to wit, a tract of land containing two hundred and forty-eight acres three roods and twenty-seven perches, conveyed by the said David Snodgrass to James L. Delaplain, and more fully described in a deed of trust made by James L. Delaplain to A. J. Wilson, and of record in recorder's office of Ohio county, West Virginia, in deed-book number fifty-two, page two hundred and thirty-four, and which this affiant

believes was conveyed by said David Snodgrass and wife to said Delaplain, by deed from David Snodgrass and wife to said Delaplain, recorded in recorder's office of Ohio county, in deed book fifty-three, page one hundred and thirteen, for the consideration only mentioned in the said deed of trust, to wit, $8,790.43 the whole consideration alleged being $15,184.04. This affiant believes, that the said conveyance from Snodgrass and wife to Delaplain, recorded in book fifty-three, page one hundred and thirteen, was made in fraud of David Snodgrass's creditors, and if not so made, that said Delaplain is indebted to David Snodgrass in the sum of $6,393.61; that David Snodgrass has other property in Ohio county aforesaid, to wit, personal property on the said tract of land and money and effects in the hands of James L. Delaplain.

"Wм. S. Goshorn.

"Sworn and subscribed to before me this 13th day of June, 1868, and I certify, that William Goshorn is a credible person.

"Witness, Michael J. Breinig, clerk of said court, this 13th day of June, 1868.

"Michael J. Breinig, Clerk.

"Endorsed.—Affidavit filed this 13th day of June, 1868.

"Teste:                    M. J. Breinig, Clerk."

Upon this affidavit the plaintiff caused the clerk of said court to endorse upon the summons issued in the cause an order of attachment in the following words: " Affidavit having been made by Wm. S. Goshorn according to law, that David Snodgrass is justly indebted to John Goshorn in the sum of $2,218.95, with interest, the sheriff of Ohio county is hereby ordered to attach the following described real property lying and being in the said county of Ohio, State of West Virginia, and Richland township, containing two hundred and forty-eight acres three roods and twenty-seven perch-

1881
Spring
Special Term.

Goshorn's Ex'r
v.
Snodgrass
et al.

es, this being the same property conveyed on the 8th day of June, 1867, from David Snodgrass and wife to James L. Delaplain, and recorded in —— book 53, page 113, and the debts due by him, the said James L. Delaplain, to the said David Snodgrass.

"Teste : "MICHAEL J. BREINIG, *Clerk.*
"*June* 13, 1868."

The summons in the cause was made returnable to the last Tuesday in June, 1868. Upon the said order of attachment the sheriff made return as follows :

"Executed by attaching the following described (property) real estate as the property of David Snodgrass, lying and being in the county of Ohio, State of West Virginia, and Richland township, containing two hundred and forty-eight acres three roods and twenty-seven perches, this being the same property conveyed on the 8th day of June, 1867, from David Snodgrass and wife to James L. Delaplain and recorded in book 53, page 113, June 13, 1868, two o'clock and fifty minutes, P. M.

"WM. L. MCPHAIL, *D. S.*
"*For Thos. J. Campbell, S. O. C.*"

On the last Tuesday in July, 1868, the plaintiff filed his bill in the cause in the clerk's office of said court, which is as follows :

"*State of West Virginia, Ohio County Circuit Court:*

"Humbly complaining, your orator, John Goshorn, showeth unto your Honor that David Snodgrass, a non-resident of this State, is indebted unto your orator in the sum of $3,104.02, with interest on $1,600.00, parcel thereof, from April 20, 1867, and with interest on $1,500.00, other parcel thereof, from November 18, 1867, $4.02, residue thereof, not bearing interest, subject to a credit of $1,012.00 as of December 26, 1867, on aforesaid note for $1,600.00, as will more fully appear by reference to exhibits "A" and "B" herewith filed, which your orator asks may be taken as part of this bill, said ex-

1881
Spring
Special Term.

Goshorn's Ex'r
v.
Snodgrass
et al.

hibits being copies of negotiable notes, the originals of which your orator avers he is ready at any time to produce. Peter Delaplain, who is the maker of the note set forth in exhibit "A," and David Snodgrass and Samuel Snodgrass, who are endorsers thereof, are liable severally for the payment of the same. David Snodgrass, who is the maker of the note set forth in exhibit " B," and Peter Delaplain and Andrew Mitchell, who are endorsers thereof, are liable for the payment of the same. Your orator avers that said notes are entirely unpaid except the credit as hereinbefore set forth, although said notes had long since been due and payable before the commencement of this suit, and that the endorsers aforesaid are liable to pay the same, said notes being negotiable, endorsed before they became due and duly protested.

"Your orator further shows unto your honor that the said David Snodgrass at and before the time when he made the note, as per exhibit " B " and at and before the time when he endorsed the note, as per exhibit "A," was seized of a tract of land in said Ohio county, containing two hundred and forty-eight acres and three roods and twenty-seven perches, lying on the waters of Short creek, in said county, being the same tract of land conveyed by Samuel Snodgrass and wife to David Snodgrass by deed dated February 24, 1866, a copy of which deed is herewith exhibited marked " C". and asked to be made a part of this bill; that after the note, as per exhibit "A," had become due and payable, and before the note, as per exhibit " B," had become due and payable, the said David Snodgrass and wife, by deed dated on the 8th day of June, 1867, with intent to defraud your orator out of the money due and to become due by the tenor and effect of said notes from him to your orator, and to defraud his other creditors, conveyed the said tract of land for the expressed sum of $15,184.00 to James L. Delaplain, about the value of the same, which deed fully describes the tract of land hereinbefore referred to, and

1881
Spring
Special Term.

Goshorn's Ex'r
v.
Snodgrass
et al.

a copy thereof is herewith submitted marked exhibit " D " and asked to be taken as part of this bill.

"Your orator further shows that the said Delaplain and wife made a deed of trust dated June 8th, 1867, of this same land to A. J. Wilson to secure the said David Snodgrass the sum of $8,790.43, with annual interest thereon after September 1, 1867, evidenced by eight notes, payable at the Merchants National Bank of West Virginia to the order of the said David Snodgrass, being for the balance of purchase-money, after appropriating part of the first payment and all of the second payment to the satisfaction of liens upon " said land already." Said notes are dated this day, and three of them are payable on the first day of September, 1868, with interest from September 1, 1867, and for the sum of $1,243.03 each. The other five are for $1,012.24 each, of the same date, interest payable annually, and are payable on the 1st day of September, 1870, &c. The trustee is to execute the deed upon the demand of any holder of any note after maturity, which said deed of trust was duly recorded, and a copy is here exhibited and marked " E " and asked to be taken as a part of this bill. Your orator believes and charges the fact so to be, that the said land was so conveyed to the said Delaplain, who is a near relative of the said David Snodgrass and was so received by the said Delaplain, with intent and for the purpose of defrauding the creditors of the said David Snodgrass, especially your orator; that the said Delaplain did not pay to the said David Snodgrass the said sum of $6,393.61, of which the said $8,790.43 is the pretended balance, nor did the said Delaplain pay the said Snodgrass any money whatever, but gave these notes mentioned in said deed of trust, and paid nothing else for the said land.

" Your orator further shows, that the said Delaplain is indebted to the said David Snodgrass, if the transaction was an actual sale, in the said sum of $8,790.43, and a larger unknown sum for all of the chattel property of

1881
Spring
Special Term.
─────────
Goshorn's Ex'r
v.
Snodgrass
et al.

the said David Snodgrass, which he received of him, which ought to be applied to the payment of your orator's debt.

"Your orator further shows unto your Honor, that on the 7th day of April, 1868, James L. Delaplain and wife conveyed the said tract of land to Samuel S. Jacob, as trustee, for the sole and separate use of Florence V., wife of Peter Delaplain, which deed was acknowledged April 16, 1868, and admitted to record in this county on the 22d day of June, 1868. A copy of said deed is herewith exhibited marked 'F' and made a part of this bill.

"Your orator further shows, that on the same day, April 7, 1868, the said tract of land was conveyed by the said Peter Delaplain and Florence V. Delaplain, his wife, and Samuel S. Jacob, acting as trustee for said Florence V. Delaplain, to A. J. Clarke in trust to secure to James L. Delaplain the sum of $1,750.00, balance of purchase-money. A copy of said deed is herewith exhibited marked 'G' and made a part of this bill.

"Your orator further shows, that on the 27th day of January, 1865, Samuel Snodgrass and David Snodgrass conveyed said tract of land by deed of trust to M. C. Good, as trustee for John Zoeckler, to secure to him the payment of $6,500.00, which deed is herewith exhibited marked 'H' and prayed to be taken as part of this bill.

"All of which doings are contrary to equity.

"Wherefore, inasmuch as your orator is remediless except in a court of chancery, and to the end that the sale so made of said land as per exhibit 'D' may be set aside and annulled for the fraud aforesaid, and be sold to satisfy your orator's said claim and his costs, and that your orator may have such other and general relief as your orator's case may require, or as to the court may seem proper and right, may it please your honor to grant unto your orator the summons of the State of West Virginia, commanding the said David Snodgrass and Mary J. Snodgrass, his wife, A. J. Wilson, trustee for David Snodgrass, John Zoeckler, Moses C. Good, trustee for

John Zoeckler, James L. Delaplain and Rebecca A. Delaplain, his wife, Peter Delaplain and Florence V. Delaplain, his wife, Samuel S. Jacob, trustee for Florence V. Delaplain, Samuel Snodgrass and Andrew Mitchell, and A. J. Clarke, trustee for James Delaplain, to appear before your Honor in this honorable court on a day certain, and then and there to answer all and singular the premises, and further to abide by and perform all such orders and decrees herein as to your Honor shall seem meet. And your orator will ever pray," &c.

1881
Spring
Special Term.

Goshorn's Ex'r
v.
Snodgrass
et al.

Said exhibit "A" is as follows:

"[40 ct. Rev. Stamp. Cancelled.]
"[40 ct. Rev. Stamp. Cancelled.]

"WHEELING, W. VA., July 17, 1866.

"Nine months after date, I promise to pay to the order of David Snodgrass the sum of sixteen hundred *dollars* 00-100 dollars, for value received, negotiable and payable at the Merchants National Bank at Wheeling, W. Va.

" PETER DELAPLAIN."

ENDORSED.—"$1,012.00. Received on the within note $1,012.00. (Endorsed in blank.)

"DAVID SNODGRASS,
"SAMUEL SNODGRASS.

"*Dec.* 26, 1867."

The certificate of protest of this note by a notary public appears in the record as part thereof in connection with the said note and seems to be in due form and no question is made upon it.

Said exhibit "B" is as follows:

WHEELING, W. VA., August 15, 1867.
" $1,500.00.

"[70c. Rev. Stamp. Cancelled.]

"Three months after date I promise to pay to the order of Peter Delaplain $1,500.00, value received, negotiable

1881
Spring
Special Term.

Goshorn's Ex'r
v.
Snodgrass
et al.

and payable at Merchants National Bank of West Virginia at Wheeling.

"[15c. Rev. Stamp.    Cancelled.]

"DAVID SNODGRASS,
"PETER DELAPLAIN,
"ANDREW MITCHELL."

Endorsed in blank.

The certificate of protest of this note by a notary public also appears in the record and no question is made upon it.

Exhibit "C" filed with the bill, is a deed dated 24th day of February, 1866, from Samuel Snodgrass and his wife to said David Snodgrass conveying to said David Snodgrass all their right, title and interest, claim and demand legal or equitable in and to the tract of land of two hundred and forty-eight acres, three roods and twenty-seven perches by metes and bounds in the bill mentioned.

This deed appears to have been acknowledged on the 13th of March, 1866, and afterwards on the 12th day of April, 1866, was duly admitted to record in the recorder's office of the said county of Ohio.

Exhibit "D" filed with plaintiff's bill is dated the 8th day of June, 1867, and is a deed from David Snodgrass and wife of Richland township in said county of Ohio, to defendant, James L. Delaplain, of the city of Wilmington in the State of Delaware, conveying by metes and bounds to said Delaplain the said tract of land of two hundred and forty-eight acres three roods and twenty-seven perches. This deed recites on on its face, that the consideration thereof is the sum of $15,184.04, to the grantors in hand paid and secured to be paid ; and the deed is a deed of general warranty. It appears to have been acknowledged on the 22d day of October, 1867, and admitted to record in the recorder's office of said county of Ohio on the 25th day of October, 1867. No lien is retained upon the face of the last named deed for any part of the purchase-money

1881
Spring
Special Term.

Goshorn's Ex'r
v.
Snodgrass
*et al.*

therein mentioned—nor does it indicate on its face the amount of the purchase-money paid, nor the amount secured to be paid, nor how any part of the purchase-money was secured to be paid.

Exhibit "E" filed by plaintiff with his bill is a deed of trust from said James L. Delaplain and his wife to A. J. Wilson, trustee, conveying said last named tract of land to the said Wilson, in trust, as the deed recites, to secure to the said David Snodgrass the sum of $8,790.43 with annual interest thereon after September 1, 1867, evidenced by eight notes of even date therewith payable at the Merchants National Bank of West Virginia, to the order of said David Snodgrass, "being for the balance of purchase-money remaining due and unpaid upon the said tract of land to the said Snodgrass after appropriating part of the first payment and all the second payment to the satisfaction of liens upon said land already. Said notes are dated this day and three of them are payable on the 1st day of September, 1868, with interest from September 1, 1867, and for the sum of $1,243.03 to the order of said Snodgrass; the other five are for $1,012.26 each, of this date with interest from the 1st day of September, 1867, payable annually, and are payable on the 1st day of September, 1870, to the order of said Snodgrass, and all negotiable and payable at said bank." The said deed of trust then provides, that the said "trustee shall proceed to execute the trust upon the demand of any holder of any of said notes after maturity according to the 6th section of chapter 117 of the Code, except that he will only require so much cash, as will meet expenses and the matured paper, and shall sell the residue so as to meet the paper to mature at its maturity, giving credit accordingly." This deed of trust appears to have been acknowledged on the 22d day of October, 1867, and admitted to record on the 25th day of October, 1867, in the recorder's office of said county of Ohio.

Exhibit "F" filed with plaintiff's bill is dated the 7th

day of April, 1868, and is a deed of trust from said James L. Delaplain and Rebecca A., his wife, to the defendant, Samuel S. Jacob of said county of Ohio, conveying to the said Jacob, as stated in the deed, in consideration of $13,750.00 to the grantors "in hand paid by Florence V. Delaplain, wife of Peter Delaplain of the said county of Ohio, the receipt whereof is hereby acknowledged, and upon the further consideration of the trusts and uses hereinafter set forth" grants to the said Jacob with covenants of general warranty by metes and bounds the said tract of land of two hundred and forty-eight acres, three roods and twenty-seven perches more or less, "in trust however, and upon this confidence, and the party of the second part hereby agrees and so covenants, that he, the said party, shall and will take, hold and forever stand seized of all the above described parcel of land together with the appurtenances to and for the only sole and separate use, behalf and benefit of Florence V. Delaplain, wife of Peter Delaplain of the county of Ohio aforesaid, so that the said Peter Delaplain shall not sell, mortgage, charge or encumber the same by way of anticipation or otherwise, but that the said party of the second part shall pay all the rents, issues and profits of the said parcel of land and the appurtenances to the said Florence V. Delaplain, or to such other person or persons, as she, the said Florence V. Delaplain, shall by her order in writing under her hand direct and appoint to receive the same, or any part thereof, during the joint lives of the said Peter Delaplain and his wife, Florence V., and upon the decease of the said Peter Delaplain in case his wife, Florence V., should survive her said husband, the said Florence V. Delaplain shall immediately take and hold in her own right all the above described parcel of land, with the appurtenances, to herself and her heirs forever ; and upon the further trust and confidence, that the said Florence V. Delaplain may devise all or any part of the above described piece or parcel of land and the appurtenances by her last will and testa-

ment, or by a paper in the nature of a will, as if she, said Florence V., were a *feme sole*, and that she may at any time otherwise alienate or dispose of the same with the consent of her trustee and joining with him and her said husband in a deed of conveyance for the same or any part thereof."

1881
Spring
Special Term.

Goshorn's Ex'r
v.
Snodgrass
*et al.*

This deed of trust appears to have been acknowledged by the said James L. Delaplain and wife on the 16th day of April, and admitted to record on the 22d day of June, 1868, in the recorder's office of said county of Ohio. The last named deed does not appear to have been signed by the trustee, Jacobs.

Exhibit "G" filed with plaintiff's bill dated April 7, 1868, is a deed of trust from said Peter Delaplain and Florence V., his wife, and Samuel S. Jacob, trustee for said Florence V., to said A. J. Clarke of said Ohio county, trustee, and for the use of James L. Delaplain, by which the grantees conveyed to said Clarke the said tract of land of two hundred and forty-eight acres, three roods and twenty-seven perches, more or less, by metes and bounds, described in the said deed of trust as being the same property, which was conveyed to said Samuel S. Jacobs, in trust for the sole and separate use of Florence V., wife of Peter Delaplain, in trust to secure the payment of $1,750.00 balance of purchase-money due to said Delaplain, and for which two negotiable notes each bearing date on the 7th day of April, 1868, have been given, signed by Peter Delaplain and Florence V. Delaplain, one for $1,000.00 payable three years after date, and the other for $750.00 payable four years after date, each with interest from date, payable annually, &c. This deed of trust is signed by Peter Delaplain, Florence V. Delaplain, S. S. Jacobs, trustee, and A. J. Clarke, and appears to have been acknowledged by each of them on the 11th day of June, 1868, and at the same time admitted to record in the recorder's office of said county of Ohio.

Exhibit "H," filed by the plaintiff with his bill is

1881
Spring
Special Term.

Goshorn's Ex'r
v.
Snodgrass
et al.

dated the 27th day of January, 1865, and is a deed of trust from said Samuel Snodgrass and David Snodgrass, of Ohio county, to Moses C. Good, of the city of Wheeling, trustee, conveying to said Good with general warranty a tract of land on Short creek, in the said county of Ohio, containing two hundred and seventy-five acres, known as recited in the deed of trust, as the home-place of John Snodgrass, deceased, the father of the grantees, and the same land devised to the said grantees by their said deceased father by his last will and testament, recorded in the circuit court of Ohio county, in trust, to secure to John Zoeckler of said county of Ohio the sum of $6,500.00, payable as follows, and manifested by six several promisory notes, given by said parties of the first part to said John Zoeckler, each bearing date the 27th day of January, 1865, one for the sum of $5,000.00, payable five years after date, one for the sum of $300.00, payable one year after date, one for $300.00, payable two years after date, one for the sum of $300.00, payable three years after date, one for $300.00, payable four years after date, and one other for $300.00, payable five years after date, all payable to John Zoeckler or assigns, &c. The tract of land conveyed by the last named deed of trust, from what manifestly appears in the record, includes and embraces the said tract of two hundred and forty-eight acres, three roods and twenty-seven perches of land mentioned in the bill and other deeds, to which reference has been made. The last named deed of trust appears to have been executed and acknowledged by the grantors therein and the said trustee, Good, on the said 27th day of January, 1865, the day of its date, and admitted to record on the same day in the recorder's office of said county of Ohio.

It appears, that on the 5th day of March, 1870, the plaintiff having died, the cause was revived by order of the said circuit court in the name of William S. Goshorn, the executor of the deceased plaintiff, and at the same time the defendant, James L. Delaplain, by leave of

1881
Spring
Special Term.

Goshorn's Ex'r
v.
Snodgrass
et al.

the said circuit court filed his answer to the plaintiff's bill, to which the plaintiff replied generally, which said answer is as follows:

" The separate answer of James L. Delaplain, one of the defendants, to the bill of complaint of John Goshorn, complainant:

" This respondent, reserving all exceptions to the bill of complaint, for answer thereto says, he admits the defendant, David Snodgrass, to be a non-resident of this State, and to have been so when this suit was instituted and the attachment in this cause was issued. He also admits that the said David is the husband of this respondent's sister, but he denies that he is otherwise related to this respondent. And this respondent further admits that the said David Snodgrass and wife, on the 8th day of June, 1867, by deed of that date, recorded in the recorder's office of this county in deed book 53, page 113, (of which deed the exhibit 'D' filed with the bill of complaint is a copy) conveyed to this respondent the tract of land in this county described in said deed, for the consideration therein mentioned; and that this respondent and his wife, on the same day, by deed of that date recorded in said recorder's office, in book 52, page 234, (of which last mentioned deed the complainant's exhibit 'E' is a copy) conveyed the same tract of land to the defendant, A. J. Wilson, in trust to secure the eight negotiable promissory notes of this respondent for the principal sum in the aggregate of $8,790.39 particularly described in the last mentioned deed. This respondent also admits that the aforesaid tract of land is and was, as the complainant alleges, of about the value of $15,184.04, for which this respondent purchased it from the said David Snodgrass.

" This respondent does not know, nor is he informed save by the complainant's bill of complaint, whether the said David Snodgrass is or ever was indebted to the complainant, or whether he ever did endorse the promissory note for $1,600.00, dated July 17, 1866, or whether

1881
Spring
Special Term.
Goshorn's Ex'r
v.
Snodgrass
et al.

he ever did make the promissory note for $1,500.00, dated August 15, 1867, as alleged in the bill of complaint. He therefore denies the truth of all and singular the allegations in the bill of complaint contained, touching the supposed debt of the said David to the complainant, or the supposed promissory notes, and respectfully insists that the complainant be held to strict proof thereof.

" This respondent denies that the said David Snodgrass made the conveyance, of which the exhibit 'D' is a copy, with any intent to defraud the complainant out of any money owing him by the supposed endorsement and note, or otherwise, or that the tract of land described in exhibit 'D' was conveyed to this respondent with any intent or purpose on the part of the said David Snodgrass of defrauding the complainant or any of his, the said David Snodgrass's, creditors; and whatever has been the intent and purpose in that respect of the said David Snodgrass, this respondent does here most peremptorily deny that any such intent or purpose existed on his part, or that he purchased the said tract, or took a conveyance thereof, or did any other act or thing with the intent or for the purpose of defrauding the complainant, or any of the creditors of the said David Snodgrass, or any other person, or of aiding the said David in carrying into effect such intent or purpose on his part; on the contrary, this respondent says that he purchased the said tract from the said David, and received the aforesaid conveyance thereof, honestly and in good faith for a fair price, as expressed in the deed of which the exhibit " D " is a copy, viz.: $15,184.04 paid and secured to be paid, of which this respondent paid at the time, $6,393.65, partly in cash, to the said David Snodgrass, and the residue in discharge of judgments and debts against the said David which then were liens and encumbrances upon the said tract of land, and that for the residue of the $15,184.04, viz. : $8,790.32, he gave to the said David the eight negotiable promissory notes hereinbefore mentioned, se-

1881
Spring
Special Term.

Goshorn's Ex'r
v.
Snodgrass
*et al.*

curing the payment thereof by the deed of trust of which the exhibit "E" is a copy. This respondent admits that on the seventh day of April, 1868, he conveyed the tract of land to Samuel S. Jacob, as trustee for the sole and separate use of Florence V., wife of Peter Delaplain, a copy of which said deed is filed with complainant's bill marked exhibit "F," and that in order to secure the deferred payments on said tract of land, the said Florence V. Delaplain, Peter Delaplain and Samuel S. Jacob executed the deed of trust in the bill mentioned, a copy of which is therewith filed marked exhibit "G;" that it is true as alleged in bill of complaint, that Samuel Snodgrass and wife executed the deed of trust in the bill mentioned to M. C. Good, a copy of which said deed of trust is filed with the bill and marked exhibit "H," but that your respondent, in order to discharge all the liens against the said estate, has paid the sum of money so secured by the said deed of trust. This respondent denies that at the time of the institution of this suit, or at the time when the supposed attachment in this cause was issued or served upon him, he was indebted to the said David Snodgrass in any sum large or small, known or unknown, for all or any part of the chattel property of the said David, as alleged in the bill of complaint. This respondent is advised and respectfully insists that the said supposed attachment is insufficient and invalid, and does not constitute at law or in equity any lien or charge upon the land conveyed to respondent as aforesaid, or upon the promissory notes of this respondent, or any or either of them hereinbefore mentioned, or all or any part of the money specified in said notes, and that in any event this respondent ought not in equity and good conscience to be required to pay any part of the money specified in said promissory notes, in satisfaction of the complainant's demand, until full, ample and complete indemnity be furnished him by the complainants against said notes, or the notes themselves be produced by the complainant and surrendered up to the respond-

1881
Spring
Special Term.

Goshorn's Ex'r
v.
Snodgrass
et al.

ent; and as to all and singular the other allegations in the bill of complaint contained (excepting only those hereinbefore admitted to be true), this respondent denies the same, and each of them, and having thus answered, prays to be hence dismissed with his reasonable costs, &c."

This answer is not sworn to.

It appears by the record, that on the 16th day of July, 1870, the said circuit court granted leave to the said William S. Goshorn, executor, plaintiff, to file an amended bill in the cause, which amended bill was then and there filed and is as follows:

"Your orator, Wm. S. Goshorn, executor of John Goshorn, deceased, as an amendment to the original bill in above case, respectfully shows unto your Honor that on and before the 7th of April, 1868, the date on which James L. Delaplain and wife made the conveyance evidenced by exhibit "F" filed with the original bill, the purchaser in said conveyance, Florence V. Delaplain, was not ignorant of the fraud set forth in the original bill, in the sale and conveyance, as per exhibit "D" filed with said bill, but that the said Florence V. Delaplain then had notice of such fraud, and of the cloud thus on her vendor's title; that on the 13th day of November, 1867, Samuel Snodgrass, as a creditor of David Snodgrass, brought a suit in chancery in this court and filed an affidavit by Isaac Irwin for an attachment, charging fraud in the conveyance mentioned in the bill in this case from D. Snodgrass and wife to James L. Delaplain, substantially as fraud is charged in the affidavit for an attachment in this case, and an attachment was issued on said affidavit and levied on the land attached herein. At January rules, 1868, said S. Snodgrass filed his bill in said case, charging fraud substantially as in the bill filed herein. Of the pendency of which proceedings by S. Snodgrass, and of the fraud charged therein, and the object thereof, the said Florence V. Delaplain had notice when the said purchase was made by her. Duly certified

copies of the summons and returns endorsed, of the bill and exhibits, except "B" and "C," which are identical with "D" and "E," in this case, and of the affidavits in said suit of D. Snodgrass are hereby exhibited as a part of this bill, and are marked respectively exhibit one, exhibit two, exhibit three, exhibit four and exhibit five.

1880
Spring
Special Term.

Goshorn's Ex'r
v.
Snodgrass
et al.

" Wherefore your orator prays that this may be taken as an amendment to the original bill, and for such other and further relief as to the court may seem meet."

The summons in the case of Samuel Snodgrass against James L. Delaplain and A. J. Wilson, in said amended bill mentioned, appears to have been issued on the 13th day of November, 1867, and was returnable to the last Tuesday in said month and year. Upon this summons there was an order of attachment made by the clerk of the circuit court of the county of Ohio, and return was made upon the same and upon the summons by the sheriff of Ohio county. The said order of attachment and the return made thereon and upon said summons are as follows :

"Affidavit having been made by Isaac Irwin that David Snodgrass is justly indebted to Samuel Snodgrass in the just and full sum of $1,053.21, the sheriff of Ohio county is hereby ordered to attach the following described real property lying and being in the said county of Ohio, State of West Virginia, and Richland township, containing two hundred and forty-eight acres, three roods and twenty-seven perches, this being the same property conveyed on the 8th day of June, 1867, from David Snodgrass to James L. Delaplain, and recorded in book 53, page 113, and the debts due by him, the said James L. Delaplain, to the said David Snodgrass.

"MICHAEL J. BREINIG, Clerk.
" November 13, 1867.

" Executed by attaching the real property named in this process, and served by copy on James L. Delaplain

and A. J. Wilson, November 14, 1867, nine o'clock and five minutes A. M.

> " Wm. L. McPhail, *D. S.*,
> " *For Thos. J. Campbell, S. O. C.*"

" David Snodgrass is no inhabitant of my bailiwick nor found therein, November 26, 1867.

> " Wm. L. McPhail, *D. S.*,
> " *For Thos. J. Campbell, S. O. C.*"

Exhibit two, which is the bill of said Samuel Snodgrass in said amended bill mentioned, seems to have been filed at January rules, 1868, and is as follows:

" State of West Virginia, Ohio County Circuit Court—*January Rules*, 1868.

" *To the Honorable E. H. Caldwell, Judge of the said Court, in Chancery Sitting:*

" Your orator, Samuel Snodgrass, hereby complaining, here shows to the court that David Snodgrass a non-resident of this State, was seized of a tract of land in the said Ohio county, containing two hundred and forty-eight acres, three roods and twenty-seven perches, lying on the waters of Short creek, in the said county, being the same tract of land conveyed by the said David Snodgrass to James L. Delaplain, dated the 8th day of June, 1867, and recorded in this county, to be more particularly referred to hereafter.

" That while owning the said tract of land, which was very saleable, the said David Snodgrass being indebted to your orator in the sum of $960.00, made his certain promissory note in writing, bearing date the day and year last aforesaid, by which promissory note the said David Snodgrass promised to pay to your orator or his order the said sum of $960.00, twelve months after the date thereof, with interest at the rate of six per cent, for value received, negotiable and payable at the First National Bank at Wheeling, West Virginia, and then and there delivered the said note to your orator, a copy of which is herewith exhibited and marked ' A,' the original

1881
Spring
Special Term.

Goshorn's Ex'r
v.
Snodgrass
et al.

of which is ready to be produced; that there is now due on the said note, including interest, about $1,060.00; that the said David Snodgrass had repeatedly promised the agent of your orator, Isaac Irwin, of Wheeling, to pay this debt, and especially when he should sell his said farm, and your orator was in hopes that he would so have done; but that the said David Snodgrass, on the 8th day of June, 1867, soon after your orator's note became due and payable, with intent to defraud your orator out of his said money so due and owing by the said note, conveyed the said tract of land for the expressed sum of $15,184.04 to James L. Delaplain, about the value of the same, which deed *passed* the legal forms of such conveyance, and was recorded, and fully described the said tract of land before referred to, a certified copy of which is here exhibited and made a part of this your orator's bill and marked "B."

"Your orator further shows, that on the same day, the 8th day of June, 1867, the said Delaplain and wife made a deed of trust of this same land to A. J. Wilson to secure the said David Snodgrass the sum of $8,790.43, with annual interest thereon after September 1, 1867, evidenced by eight notes payable at the Merchants National Bank of West Virginia to the order of the said David Snodgrass, being for the balance of purchase-money after appropriating part of the first payment and all of the second payment to the satisfaction of liens upon said land already. Said notes are dated on said day, and three of them are payable on the 1st day of September, 1868, with interest from September 1, 1867, and for the sum of $1,243.03 cash; the other five are for $1,012.24, each of the same date, interest payable annually on the 1st day of September, 1870; the trustee is to execute the deed upon the demand of any holder of any note after maturity, and which said deed of trust was duly recorded, and a copy is herewith exhibited and marked "C," and is here particularly referred to. Your orator believes and charges the fact to be, that the said land

1881
Spring
Special Term.

Goshorn's Ex'r
v
Snodgrass
et al,

was so conveyed to the said Delaplain, who is a near relative of the said David Snodgrass, and was so received by the said Delaplain, with intent and for the purpose of defrauding the creditors of the said David Snodgrass, especially your orator; that the said Delaplain did not pay to the said David Snodgrass the said sum of $6,393.61, of which the said $8,790.43 is the pretended balance, nor did the said 'Delaplain pay the said Snodgrass any money whatever, but gave three notes mentioned in the said deed of trust, and paid nothing else for the said land.

"Your orator further shows, that the said Delaplain is indebted to the said David Snodgrass, if the transaction was an actual sale, in the said sum of $8,790.43, and a large unknown sum, for all of the chattel property of the said David Snodgrass which he received of him, which ought to be applied to the payment of your orator's debt. Your orator shows, that the said A. J. Wilson is the trustee for the said land and debt, and may secure the money therefor.

"All of which actings and doings are contrary to equity and conscience, and inasmuch as your orator is remediless by the rules of the common law, and is only relievable in this court as a court of equity, he therefore prays, that the said David Snodgrass, the said James L. Delaplain and A. J. Wilson be made parties defendant hereto, and that summons may issue against them. Your orator prays, that the said David Snodgrass be enjoined from receiving the money due on the said note or of transferring the same to the prejudice of your orator, and that the said Delaplain be enjoined from paying the same to the prejudice of your orator at this time; and upon the final hearing of this your orator's case, that the court order and decree, that the said sale so made of the said land be set aside for the fraud aforesaid, and be sold to satisfy your orator's said claim and his costs, or that the court order and decree, that the said James L. Delaplain, out of the money he so owes the said David Snodgrass,

pay your orator's said claim, and such other and further relief as your orator's case may require, or as to the court shall seem proper and right. And your orator will ever pray, &c.

1881
Spring
Special Term.

Goshorn's Ex'r
v.
Snodgrass
et al.

"SAMUEL SNODGRASS,
" By Peck & Hubbard, Sol."

EXHIBIT NO. 3 TO BILL.

[50c. U. S. stamp.]
" $960.00.                    " WHEELING, April 9, 1866.
" Twelve months after date, I promise to pay to the order of Samuel Snodgrass, with six per ct. interest, $960.00, value received, negotiable and payable at the First National Bank, at Wheeling, W. Va.
"(Exhibit " A.")
" DAVID SNODGRASS."

EXHIBIT NO. 4 TO BILL.

" State of West Virginia: In the Clerk's Office of the Circuit Court of Ohio County.
" WHEELING, W. VA., Nov. 13, 1867.
"Isaac Irwin this day made oath before me, clerk of said court, that David Snodgrass is justly indebted to Samuel Snodgrass in the sum of $1,053.21, and that said claim is founded on a promissory note made by the said David Snodgrass, and long since due and payable ; that the said claim is just, and there is present cause of action therefor, and that the affiant believes that the plaintiff ought to recover the amount above claimed, and that the said David Snodgrass has estate in the said county, to wit, a tract of land conveyed by said David Snodgrass to James L. Delaplain, and more fully described in a deed of trust made by James L. Delaplain to A. J. Wilson, and of record in recorder's office of Ohio county, in deed book No. 52, page 234, and which this affiant believes was conveyed by said David Snodgrass to said Delaplain for the consideration only mentioned in the said deed of trust, to wit, $8,790.43, the whole considera-

1881
Spring
Special Term.

Goshorn's Ex'r
v.
Snodgrass
et al.

tion alleged being $15,184.04. This affiant believes the said conveyance from Snodgrass to Delaplain was made in fraud of David Snodgrass's creditors, and if not so made, that said Delaplain is indebted to said David Snodgrass in the sum of $6,393.61; that said David Snodgrass has other property in Ohio county aforesaid, to wit, personal property on the said tract of land and money and effects in the hands of James L. Delaplain, and that said David Snodgrass is a non-resident of the State of West Virginia.

" Isaac Irwin.

" Given under my hand the day and year aforesaid.
" Michel J. Breinig,<br/>Clerk C. C't.

Exhibit number six to said amended bill is dated January 30, 1867, and is an affidavit made by Daniel Peck, that the defendant, David Snodgrass, is not a resident of the State of West Virginia. It appears that on the 24th day of November, 1871, a motion made in the cause at bar by the defendant, James L. Delaplain, to quash the order of attachment endorsed upon the summons in this cause was overruled by the court. It further appears, that on the 25th of November, 1871, the said court granted leave to the plaintiff, William S. Goshorn, ex'r, &c., to file another amended bill in the cause, and said amended bill was filed and is in the following words:

"*To the Hon. Thayer Melvin, Judge, &c.* :

" As an amendment to the original bill filed in said cause, your orator, William S. Goshorn, executor, &c., showeth unto your Honor, that on the 30th day of May, 1868, David Snodgrass released the deed of trust made on the 8th day of June, 1867, as set forth in the original bill, as will more fully appear from the certified copy of said release from the recorder's office of Ohio county, West Va., filed herewith marked exhibit " P," and asked to be taken as part of this bill; that on the 19th day of November, 1867, James L. Delaplain, out of the pro-

ceeds of the personal property, stock, &c., of the said David Snodgrass on the farm mentioned and described in the original bill, which personal property had been sold by said Delaplain, paid $1,034.96 on two executions in favor of V. H. Vanmeter, one against David Snodgrass and Peter Delaplain, and the other against David Snodgrass, from this court, copies of which executions, with the sheriff's returns thereon, officially certified, are herewith filed and asked to be taken as a part of this bill marked respectively exhibit "R" and exhibit "S;" that the original of exhibit "S" having been issued for $466.60, when it should have been issued for $566.60, that being the amount of the judgment in the case as of record in this court, another execution was issued subsequently, and $122.42, the amount thereof, paid by James L. Delaplain when it was returned satisfied, March 29; 1869, an official copy whereof is herewith filed and asked to be taken as a part of this bill. Wherefore your orator prays that the allegations and statements made herein may be received as an amendment to the original bill, and that the defendants may be required to answer the same as fully as if originally incorporated in said bill. The plaintiff also asks for the relief prayed for in the original bill, and for such other, further and general relief as the court may see fit to grant, &c."

1881
Spring
Special Term.

Goshorn's Ex'r
v.
Snodgrass
et al.

EXHIBIT "P" TO SECOND AMENDED BILL.

"*Know all Men these Presents*, That I, David Snodgrass, hereby release a deed of trust made by James L. Delaplain to A. J. Wilson, my trustee, dated the 8th day of June, 1867, and recorded in the recorder's office of Ohio county, West Virginia, in deed book No. 52, page 234.

"Witness my hand and seal.

"DAVID SNODGRASS. [Seal.]

"Acknowledged before the subscriber this 30th day of May, 1868.

1881
Spring
Special Term.

Goshorn's Ex'r
v.
Snodgrass
et al.

" Witness my hand and seal of office, at Wilmington City, the day and year aforesaid.

" THOMAS YOUNG,
" *Notary Public for the State of Delaware.*"

"[Notarial Seal.]
"[U. S. S., 5c.  Cancelled.]"

" The foregoing release was presented to me in my office, certified as above, and admitted to record this 11th day of June, 1868.

" Teste :

" ROB'T B. WOOD,
" *Recorder Ohio Co., W. Va.*"

Exhibit " R " to said second amended bill is a *fi.fa.* in favor of V. H. Vanmeter against David Snodgrass for the sum of $399.26, with interest thereon from July 5, 1865, and $8.32 costs issued from the clerk's office of the said circuit court of Ohio county.   This writ of *fi. fa.* was issued on the 22d day of October, 1867, and was made returnable to the rules of said court on the last Tuesday of November, 1867; and it appears that the said execution was received by the sheriff of said county on the same day it was issued, and was returned by his deputy as being satisfied on November 19, 1867.

Exhibit " S " to said second amended bill is a *fi. fa.* in favor of V. H. Vanmeter against David Snodgrass and Peter Delaplain for the sum of $466.60, with interest thereon from July 2, 1865, and $8.36 costs, issued from the clerk's office of the said circuit court on the 22d day of October, 1867, and returnable to rules on the last Tuesday in November, 1867.   And it appears, that the last named writ was received by the sheriff of said county on the day of its date and was returned by his deputy satisfied on the 19th of November, 1867.

Exhibit "T" filed with said second amended bill is a writ of *fi. fa.* in favor of said Vanmeter for $556.60 with interest on $100.00 from July 5, 1865 subject to a credit of $466.60 paid November 19, 1867, against David Snodgrass and Peter Delaplain.   The last named writ

1881
Spring
Special Term.

Goshorn's Ex'r
v.
Snodgrass
et al.

was received by a deputy of the sheriff of said county on the 19th day of February, 1869, and was returned by said sheriff satisfied, March 29, 1869.

It further appears, that on the 17th day of July, 1873, the defendants, Peter Delaplain and Florence V., his wife, filed their joint and several answer, to which the plaintiffs replied generally, in which they say, that "for answer to the said bills the said defendants say, they and each of them deny all and singular the allegations in said bills or either of them contained, and particularly the fraud alleged therein, and the notice thereof, if any such fraud there was, alleged to have been had by the said defendants, or either of them. And having thus answered,. they pray hence to be dismissed with their reasonable costs, &c."

And afterwards, "at a circuit court held for the county of Ohio, on the 4th day of September, 1874, this cause came on to be heard on the original and amended bills taken for confessed as to the defendants A. J. Wilson, trustee, John Zoeckler, Moses C. Good, trustee, Samuel S. Jacob, trustee, Andrew Mitchell and A. J. Clarke, trustee, on whom process has been duly served, they still failing to appear and plead, answer or demur to the said bills, upon the order of publication herein duly executed by being posted and published according to law more than one month before this hearing as to to the non-resident defendants, David Snodgrass and Mary J. Snodgrass, his wife, and Samuel Snodgrass, upon the separate answer of James L. Delaplain, and joint answer of Peter Delaplain and Florence V. Delaplain,. his wife, with general replications now here made and and entered thereto, upon the exhibits to the bills, and the original notes now filed, of which exhibits "A" and "B" are copies, upon the depositions herein of James L. Delaplain, William H. Taney, Andrew Mitchell, S. S. Jacob, John Zoeckler, Florence V. Delaplain, and two depositions herein of William McPhail, and the depositions of Isaac Irwin and William S. Goshorn, taken and filed in

1881
Spring
Special Term.
Goshorn's Ex'r
v.
Snodgrass
et al.

the pending cause in this court in chancery of Samuel Snodgrass against David Snodgrass *et al.*, and read as evidence and used as such in this cause by consent, upon the papers annexed to and filed with said depositions, upon the affidavits of George B. Caldwell, upon the summons with attachment endorsed and duly levied on the real estate in controversy, upon the affidavit of William S. Goshorn on which the attachment was founded, and upon the former orders and decrees, and was argued by counsel. On consideration whereof, the court doth order, adjudge and decree that William S. Goshorn, executor of the will of John Goshorn, deceased, do recover of and from the defendant, David Snodgrass, the sum of $3,031.79, the aggregate of principal and interest due at this date, with interest thereon until paid, and that the deed of David Snodgrass and Mary J., his wife, dated on the 8th day of June, 1867, to James L. Delaplain, admitted to record among the public land records of Ohio county, West Virginia, on the 25th day of October, 1867, the deed of trust dated on the 8th day of June, 1867, from said Delaplain and Rebecca A., his wife, to A. J. Wilson, trustee, admitted to record among said public land records on October 25, 1867, the deed dated April 7, 1868, from James L. Delaplain and wife to Samuel S. Jacob, trustee, admitted to record among said public land records on June 22, 1868, and the deed of trust dated April 7, 1868, from Peter Delaplain and Florence V. Delaplain, his wife, and Samuel S. Jacob, trustee, to A. J. Clarke, trustee, admitted among said public land records on June 11, 1868, be, and the same are hereby set aside, annulled and declared void as to the plaintiff as a creditor to the amount aforesaid of the debt of David Snodgrass, the court finding that said deeds were made to delay, hinder and defraud creditors. And it is still further ordered, adjudged and decreed by the court, that this cause be referred to one of the commissioners of this court to take, state and report an account of the amount unpaid, if any, of the debt secured by the deed of trust dated January

1881
Spring
Special Term.

Goshorn's Ex'r
v.
Snodgrass
et al.

27, 1865, from Samuel Snodgrass and David Snodgrass to Moses C. Good, trustee, a copy of which deed is filed in this case, and an account of all other liens, if any, on said real estate, and claims, if any, against the same, or entitled to relief, in respect to the same or out of the same, and the amount and priorities thereof. Said commissioner shall also report any other matters deemed pertinent by himself or which may be required by any of the parties. Notice of the time and place of his proceedings under this decree may be given by publication once a week for four successive weeks in some newspaper published in Wheeling, West Virginia, and such publication shall be equivalent to personal service of such notice on all parties."

Afterwards the commissioner to whom the cause was referred, made his report which is substantially as follows:

"In pursuance of a decree made in this case, on the 4th day of September, A. D. 1874, your commissioner gave notice by publication once a week for four successive weeks, in the Wheeling *Intelligencer*, a newspaper published in the city of Wheeling, (a copy of which said notice, duly certified, is hereto annexed) that he had before him the matters in said decree referred to, and that on Thursday, the 11th day of March, 1875, at ten o'clock A. M., at his office, number seventy-three Twelfth street, in the city of Wheeling, in the county of Ohio and the State of West Virginia, he would proceed to take, state and report to said court an account of the amount unpaid, if any, of the debts secured by the deed of trust dated January 27, 1865, from Samuel Snodgrass, and David Snodgrass to Moses C. Good, trustee, to secure John Zoeckler $6,500.00, which deed of trust is now of record among the public land records of the said county; and an account of all liens, if any, on the tract of land in Richland district, Ohio county, West Virginia, containing two hundred and forty-eight acres, three roods and twenty-seven perches, more or less, conveyed by

94

1881
Spring
Special Term.

Goshorn's Ex'r
v.
Snodgrass
et al.
James L. Delaplain and wife to S. S. Jacob, as trustee for Florence V. Delaplain, wife of Peter Delaplain; and also the claims, if any, against said land, or entitled to relief in respect to the same or out of the same, and the amounts and priorities thereof, at which time and place aforesaid, your commissioner commenced the taking of said account, and continued the same from the said 11th day of March, 1875, to this 13th day of March, 1875, when the same was completed. Your commissioner reports, that the lien in favor of John Zoeckler for $6,500.00, secured by deed of trust to Moses C. Good, trustee, dated January 27, 1865, on the David Snodgrass farm, mentioned and described in the bill and proceedings in this cause, has been fully paid off and discharged, and there are no claims against said land or entitled to relief in respect to the same of the same, except the liens hereinafter mentioned.

" Your commissioner further reports that he finds the following liens upon the real estate mentioned and described in the bill and proceedings in this case, the respective amounts and priorities of which are as follows, to wit:

"(1st Lien.)

" IN THE CIRCUIT COURT.

"*M. L. Hill, assignee, v. David Snodgrass.*

| | | |
|---|---:|---:|
| "Judgment for plaintiff, Dec. 16, 1870 | $119 | 20 |
| "With interest from January 17, 1870, 8 yrs. 61 days | 58 | 33 |
| " Costs | 11 | 28 |
| "Amount debt, interest and costs, March 13, 1875 | $188 | 81 |

"(2d Lien.)

" IN THIS CIRCUIT COURT.

" *Samuel Snodgrass* v. *David Snodgrass et al.*—In chancery.

| | | |
|---|---:|---:|
| " Amount of plaintiff's lien | $1,444 | 16 |
| "With interest from September 4, 1874, 6 mos.,14 days | 17 | 69 |
| " Costs | 77 | 21 |
| " Amount debt, interest and costs to March 13, 1875, as per decree of Sept. 4, 1874, a copy of which is herewith returned | $1,539 | 06 |

1881
Spring
Special Term.

Goshorn's Ex'r
v.
Snodgrass
et al.

"(3d Lien.)

" In this Circuit Court.

" *William S. Goshorn, ex'r,* v. *David Snodgrass et al.* —In chancery.

"Amount of plaintiff's lien with interest from September 4, 1874, 6 mos., 14 days; lien........................................ $3,031 79

"Interest.................................................... 97 98

" Costs.................................................... 112 56

"As per decree of Sept. 4, 1874, herewith returned........... $3,242 33

" All of which is respectfully submitted.

" Wm. H. Caldwell,
" *Com'r for Circuit Court of Ohio County.*"

The decree in the case of *Samuel Snodgrass* v. *David Snodgrass et al.* of September 4, 1874, referred to by said commissioner in his report is as follows :

"Ohio County Circuit Court, Sept. 4, 1874.

" *Samuel Snodgrass* v. *David Snodgrass et al.*—In chancery.

" This cause came on this 4th day of September, 1874, to be heard on the bill, and exhibits filed therewith, and the original note, of which exhibit "A" is a copy, now filed, said bill being taken for confessed as to A. J. Wilson, trustee, on whom process has been duly served, he still failing to appear and plead, answer or demur to the bill, upon the order of publication herein duly executed by being posted and published as required by law more than one month before this hearing as to the non-resident defendant, David Snodgrass, upon the answer of James L. Delaplain and the general replication now here entered thereto, upon the affidavit of Daniel Peck and the depositions of Isaac Irwin and William S. Goshorn taken and filed in this cause, and those of James L. Delaplain, William H. Taney, Andrew Mitchell, John Zoeckler, S. S. Jacob, Florence V. Delaplain, taken and filed in this court in the pending case in chancery of *William S. Goshorn, executor,* against *David Snodgrass et al.,* and two depositions of William McPhail taken

1881
Spring
Special Term.

Goshorn's Ex'r
v.
Snodgrass
et al.
and filed in said case, the depositions in which are used in this case by consent, upon the papers annexed to and filed with said depositions, upon the summons, with the attachment endorsed and duly levied upon the real estate in controversy, upon the affidavit of Isaac Irwin on which the attachment was founded, and upon the former orders and decrees, and was argued by counsel. On consideration whereof, the court doth order, adjudge and decree that the plaintiff, Samuel Snodgrass, do recover of and from the defendant, David Snodgrass, the sum of $1,444.16, the aggregate of principal and interest now due—that is to say, $960.00 with interest from April 9, 1866, and his costs herein to be taxed by the clerk, and that the deed of David Snodgrass and Mary J., his wife, dated on the 8th day of June, 1867, to James S. Delaplain, admitted to record among the public land records of Ohio county, West Virginia, on the 25th day of October, 1867, the deed of trust dated June 8, 1867, from said Delaplain and Rebecca A., his wife, to A. J. Wilson, admitted to record among said public land records on October 25, 1867, be and are hereby set aside, annulled and declared void as to the plaintiff as a creditor to the amount aforesaid of David Snodgrass, the court finding that the said deeds were made to delay, hinder and defraud creditors. And it is further ordered, with the consent of the plaintiff herein, that he come in under the decree for an account this day entered by this court in the said chancery cause of *William S. Goshorn, executor*, against *David Snodgrass, et al.*, by filing a duly certified copy of this decree with the commissioner acting under said decree for an account.

It appears that on the 15th day of May, 1875, the said circuit court made and entered a decree in the cause at bar as follows :

" *William S. Goshorn, executor of John Goshorn, deceased,*
v. *David Snodgrass and others.*—In chancery.

This cause came on this day again to be heard upon the papers formerly read, the former orders and decrees,

and the report of William H. Caldwell, a commissioner of this court, made in pursuance of the decree in this case entered September 4, 1874, filed on the 27th day of March, 1875, and there being no exceptions to said report, the same is hereby confirmed. Upon consideration whereof, it is by the court adjudged, ordered and decreed that unless said David Snodgrass, or some person for him, shall within sixty days after the ending of the present term of this court pay to M. L. Hill, assignee, his judgment for $119.20, with interest thereon from January 17, 1867, until payment, and $11.28 costs of suit, to Samuel Snodgrass $1,444.16, with interest thereon from September 4, 1874, until payment, and $77.21 costs in the chancery suit in this court of said Samuel against said David and others, and to the plaintiff $3,031.79, with interest thereon from September 4, 1874, until payment, and also the costs of this suit, George B. Caldwell, who is hereby appointed a special commissioner for that purpose, shall sell at public auction, at the front door of the court house of Ohio county, in the State of West Virginia, the whole, or so much as may be necessary to pay said money and interest and costs, and the costs of such sale, including the lawful commissions of said special commissioner for making such sale, of the following described tract of land situate on Short creek, in Richland district, and county and State aforesaid, and bounded as follows, that is to say : Beginning at a wild cherry tree corner to William Busby, Samuel McClure and Joseph and Mitchell Waddle; thence with said Waddle's line, north 10¼° east 42 4-10 poles to a stone; thence south 64° east 8 8-10 poles to a stone; thence south 17° east 16 1-10 poles to a stone; thence north 32¾° east 75 poles —, formerly an ash ; thence with the lines of Lavinia Taylor, south 88¼° west 11 2-10 poles to a stone, formerly a white oak ; thence north 142 8-10 poles to a white oak ; thence north 11½° east 207 poles to a beach snag, corner to said Taylor, W. P. Brady and Edward Rouse; thence with

1881
Spring
Special Term.

Goshorn's Ex'r
v.
Snodgrass
et al.

1881
Spring
Special Term.

Goshorn's Ex'r
v.
Snodgrass
et al.

Rouse's line, south $46\frac{1}{2}°$ west 42 8-10 poles to a stone; thence south $24\frac{1}{2}°$ west 194 poles to a stone formerly a locust, on the north bank of Short creek; thence down the several meanders of said creek 193 2-10 poles; thence leaving the creek and running with Jesse Wells's line, south $64\frac{1}{4}°$ west 54 3-10 poles to a stone in Wells's line and a corner to Robert Trimble; thence with his lines, south $25\frac{1}{4}°$ east 54 poles to a stone; thence "south $48\frac{1}{4}°$ east $98\frac{1}{2}$ poles to a stone; thence south $29\frac{1}{2}°$ east $13\frac{3}{4}$ poles to a stone; thence south 7° east 22 poles to a stone; thence south 23° east 70 poles to a stone; thence with said William Busby's lines, south 54° east $62\frac{1}{4}$ poles to a white oak stump; then south — west — poles to a stone in the road; thence south $50\frac{1}{2}°$ east 33 4-10 poles to the place of beginning, containing two hundred and forty-eight acres three roods and twenty-seven perches, more or less, being the same real estate attached in this cause, and the same mentioned in a deed from David Snodgrass and wife to James L. Delaplain, dated the 8th day of June, 1867, and admitted to record by the recorder of said county, October 25, 1867, and a copy of which is filed with the bill in this cause marked exhibit " D," and which deed was declared void and set aside as to the plaintiff as a creditor of said David Snodgrass by the decree herein entered September 4, 1874.

" The terms of said sale shall be one third of the purchase-money, or such further sum as the purchaser may elect, cash in hand, the balance in equal instalments, payable in one and two years, respectively, from the day of sale, with interest from the day of sale, the purchaser giving his bond for the deferred installments, with security approved by said special commissioner, said bonds bearing interest from their date, and the title to the property sold to be retained until the payment of the purchase-money in full. Before making sale hereunder, said special commissioner shall give notice thereof and of the time, place and terms thereof by publishing the same in a newspaper printed and published in the city

1881
Spring
Special Term.

Goshorn's Ex'r
v.
Snodgrass
et al.

of Wheeling, in said county, daily (Sundays excepted) for thirty days prior to the sale and by posting at three or more public places in the county, one of which to be reasonably near the premises, and he shall also before making sale hereunder enter before and file with the clerk of this court a bond with security approved by said clerk in the penalty of $15,000.00, conditioned according to law. And said special commissioner shall report his proceedings hereunder to this court for confirmation or other order.

On the 18th day of April, 1876, the said circuit court made and entered a final decree in the cause as follows:

" *William S. Goshorn, executor of John Goshorn, deceased,*
    v. *David Snodgrass and others.*

" This cause came on to be further heard this 18th day of April, 1876, on the former orders and decrees, and the papers formerly read, and on the report of sale of George B. Caldwell, special commissioner, this day filed, and was argued by counsel. On consideration whereof, it is ordered, adjudged and decreed by the court, that the said report and the sale of real estate therein mentioned be and is hereby approved and confirmed, and the said commissioner is allowed his commissions therein mentioned out of the cash instalment received by him of the purchase-money of the said real estate, and that the expenses therein mentioned be paid at once by him out of said cash instalment; that he shall withdraw the bonds of the purchaser and R. M. Delaplain, accompanying said report, filing duly certified copies thereof with the clerk among the papers of the case, and that he do collect the said bonds and on payment of both thereof in full, that the said special commissioner do make, acknowledge and deliver a deed, with special warranty, granting and conveying said real estate to the purchaser, L. S. Delaplain. The said commissioner has permission to receive payment of the principal amount of said bonds, with interest thereon to the date of payment, as in full

payment of said bonds, and on such payment shall make, acknowledge and deliver the deed aforesaid, for drafting which he shall be allowed $5.00 out of the moneys in his hands, and all other questions are reserved."

The substance of the evidence taken and filed in this cause is as follows: The defendant, Florence V. Delaplain, whose deposition was taken by plaintiff, testifies substantially, that she was not aware, when she purchased the land in question, which was conveyed to S. S. Jacob as her trustee, that a suit had been brought to set aside as fraudulent the sale of said land by David Snodgrass and wife to James L. Delaplain or anything of the kind ; but, she says, " we took a bond to make us safe, but not in that case or anything about it." She also says: " We have the bond in our possession at home, and we are willing to produce it and consent, that a copy of it may be made and annexed to my deposition." The bond thus referred to by the said Florence V. Delaplain and produced is as follows:

" *Know all Men by these Presents*, That we, James L. Delaplain and James Delaplain, of the State of Delaware, are held and firmly bound unto Samuel S. Jacobs, trustee for Florence V. Delaplain, in the just and full sum of $2,000.00, for the payment whereof, well and truly to be made, we bind ourselves, our heirs, executors and administrators firmly by these presents. Sealed with our seals and dated this 30th day of May, A. D. 1868.

" The condition of the above obligation is such, that, whereas, the said James L. Delaplain has sold and conveyed certain property in Ohio county, West Virginia, to the said Samuel S. Jacobs, trustee for Florence V. Delaplain ; and whereas, there have been certain attachments at law and in chancery levied upon the said property by certain creditors or alleged creditors of David Snodgrass; and whereas, the said suits and actions are now pending and undetermined : Now, therefore, if the said James L. Delaplain shall indemnify and save harm-

less the said Samuel S. Jacobs, trustee for Florence V. Delaplain, against any judgment or decree that may be rendered against the said real estate in the said suits or actions, and against all loss, expense or damages in any manner incurred or to be incurred in the defence of the same, or in any manner incidental thereto, then this obligation to be void, otherwise to be and remain in full force and effect.

1881
Spring
Special Term.

Goshorn's Ex'r
v.
Snodgrass
et al.

"JAMES L. DELAPLAIN, [Seal.]
"JAMES DELAPLAIN.    [Seal.]
"Signed, sealed and acknowledged in presence of
"THOMAS · YOUNG.

"Be it known that on the 30th day of May, 1868, before me, Thomas Young, notary public of the State of Delaware, residing in the city of Wilmington, personally came James L. Delaplain and James Delaplain and acknowledged the above bond to be their act and deed.

"Given under my hand and official seal the day and year aforesaid.

"THOMAS YOUNG,
"[Seal.]                     "*Notary Public.*"
"(One Dollar Stamp.)

The said Florence V. Delaplain was asked this question by plaintiff: "Had you never heard, at the time you bought the land, that the sale from David Snodgrass and wife to James L. Delaplain was a sham sale, or fraudulent, or that there was such a report, or that some person had said, that such was the case?" To which question she answered: "I never knew anything about it, or heard anything about it, until the land was bought." She further says in answer to another question as to where she got the $13,750.00 she paid or agreed to pay for the land: "I sold my own property and bought it with the proceeds of the sale. My husband furnished me with no part of the amount paid." She further states, that her brother Samuel H. Kelly, who is a physician in West Liberty in Ohio county, and her trustee S. S. Jacob acted as her agents in the purchase of said land.

1881
Spring
Special Term.

Goshorn's Ex'r
v.
Snodgrass
et al.

S. S. Jacob in his deposition states, that he never saw the bond mentioned in Florence V. Delaplain's deposition, and knew nothing about it except from hearsay and does not recollect, from whom he heard it. The defendant, James L. Delaplain, in his deposition states, that he resided at the date of his deposition, which is the 13th of May, 1871, in the city of Philadelphia. The

The plaintiff propounded to him this question, viz: "Why did you execute the bond, a copy of which is now handed you marked exhibit "A"? (This is the same bond mentioned in the deposition of Florence V. Delaplain). To which question he answered—"It was executed to indemnify the parties against any loss, that might occur by reason of attachments, that were issued against the land. Florence Delaplain was not willing to accept the title without this bond. My only conversation with Florence Delaplain was about the purchase of the property. She knew, that the attachments were against the property, and would not buy it without the execution of the bond."

William McPhail (deputy sheriff) in his deposition says, he has examined exhibits "R" and "S" to amended bill (which are executions as we have seen) and that he levied the said executions, but made no endorsement of the levy thereon, having made a proposition to parties conducting the sale (James L. Delaplain) to release the levy at once, prior to sale, provided they would give him all the cash proceeds of sale to the amount of said executions, and in case the cash proceeds did not cover the amount of the executions, that they would give him such notes, as he would select from those received from the sale—that the result was the sale was stopped for about one hour, after which consideration the proposition was agreed to ; that he permitted the property to be sold by said Delaplain and received in satisfaction of said executions part notes and part cash, which agreement was satisfactory to plaintiff's attorney ; that said levy, proposition and sale were made on the property formerly

known as the Daniel Snodgrass property, now known as the Delaplain property on Short creek in Ohio county, and, as he believes, were all made on the 14th day of November, 1867; that he was deputy-sheriff at the time and since January 1, 1867; that to the best of his knowledge he levied on several head of cattle, he thinks two head of horses and sundry farming implements, several head of hogs, sundry pieces of household furniture, consisting of chairs, bedsteads, hat rack and other articles, in fact all the personal property found upon the premises on his arrival on November 14, at nine o'clock and five minutes A. M., which he levied on as the property of David Snodgrass; that after having made known his settlement of executions spoken of to Mr. Jacobs, plaintiff's attorney, he was informed by him, that the clerk had made an error of $100.00 on the execution spoken of, also by the clerk, who was somewhat bothered about the same; that after some time an execution was issued for the said $100.00 in favor of said Vanmeter, which was satisfied by Peter Delaplain; that by reference to exhibits "S" and "T" the mistake of $100.00 spoken of will be discovered.

W. H. Taney in his deposition says, that the advertisement then shown to him marked "W. H. C." and attached to his deposition, was published daily in the *Register*, a newspaper published in the city of Wheeling, from the 30th of October, 1867, to the 14th day of November, 1867, inclusive. The said advertisement is as follows: " Public sale of real estate and personal property on Thursday, November 14, 1867, on the premises, the farm situated in Richland township, Ohio county, on Short creek, two miles from the Ohio river containing about two hundred and forty-eight acres, on which is erected a large and substantial brick dwelling house, two stables and other out-buildings in good repair, together with a large lot of farming utensils, household and kitchen furniture, &c. For further particulars and terms see hand bills.

" JAMES L. DELAPLAIN."

1881
Spring
Special Term.

Goshorn's Ex'r
v.
Snodgrass
et al

1881
Spring
Special Term.

Goshorn's Ex'r
v.
Snodgrass
et al.

John Zoeckler in his deposition in answer to the question, when any part of the $6,500.00 secured to him by deed of trust to Moses C. Good dated January 27, 1865, on said David Snodgrass's farm, was paid, states, that the first $300.00, which was interest, was paid in January, 1865. There was never anything paid on the principal until January, 1872, when the whole principal was paid by Peter Delaplain, the interest having been paid annually before that.

Wm. S. Goshorn in his deposition states, that he is well acquainted with the parties to this suit; that on the 19th day of November, 1867, he heard, that James L. Delplain was in the city (Wheeling); that his father being a creditor of David Snodgrass, and understanding that Snodgrass had sold his farm to Delaplain, he met Delaaplain on Monroe street, and introduced himself to him; that he commenced a conversation with him about David Snodgrass's affairs; that he (Delaplain) said he had bought his farm, stock, &c., on a speculation; had paid him $2,500.00 for stock on the farm and $61.00 per acre for the farm; that he then asked Delaplain, how much money he had paid him and he said $2,500.00 for stock, &c., had paid him nothing on farm; that he (Delaplain) afterwards said, he did not pay it in money; that he had paid part to Snodgrass and had assumed some debts; had paid Vanmeter $1,000.00 that day; that after coming to his father's office he explained the deed of trust, and that he had given his note for $8,790.43, and assumed to pay the amount of the liens on the said land, being a deed of trust to Zoeckler and two judgments, he thinks he said the one of Vanmeter's, which he had paid that day; that he, Delaplain, said he did not know anything about Snodgrass's indebtedness; that he did not know anything except what was on record; that he met Delaplain two or three times afterwards, and in one of his conversations he said, he had bought the land as a speculation; that he (witness) told him he thought it was a very poor speculation, and that he thought it was

a fraud on the creditors of Daniel Snodgrass ; that immediately after the first day's conversation he took down what had been said in writing in the very language used, so far as he could recollect it.   On cross-examination witness said there was no person present at the conversation on the street, but that his father was present during the conversation in his office.   On re-examination in chief witness stated, that said Snodgrass married Delaplain's sister and that he did not think, that land in Ohio county had fallen in price from June 1867, to June 1868.

The deposition of Isaac Irwin is as follows:

" 1st Interrogatory—State if you are acquainted with the parties to this suit ?

" 1st Answer—I am ; I know them all.

" 2d Interrogatory—State what you know about the transaction involved in this suit ?

" 2d Answer—On the same day the deed of conveyance to James L. Delaplain, or the day after, was left at the recorder's office, Peter Delaplain was passing my office and told me James L. Delaplain had bought David Snodgrass's place.  Soon afterwards I met James L. Delaplain and asked him if he expected to become a citizen of Ohio county, as I saw he had bought Snodgrass's farm.   He said he did not expect to become a citizen, but he had bought it on a speculation.  I told him I had a claim against David Snodgrass in favor of Samuel Snodgrass, his brother, which was a note that had been given in part pay for that land.   He said he did not know anything about the claim against David Snodgrass, and refused to assume that claim.

" 3d Interrogatory—State if you were present at a sale made by Delaplain of the same personal property he claimed to have bought from David Snodgrass.

" 3d Answer—Yes, sir, I was.   James L. Delaplain was there.   It was a public sale, and I cannot recollect who were the purchasers.   This sale was had on the

1881
Spring
Special Term.

Goshorn's Ex'r
v.
Snodgrass
et al.

1881
Spring
Special Term.

Goshorn's Ex'r
v.
Snodgrass
et al.

same day the attachment in this suit was served on Delaplain."

On cross-examination he certified as follows:

" 1st Interrogatory—What interest had you in Samuel Snodgrass's note sued on in this case?

" 1st Answer—None at the time suit was brought nor since.

" 2d Interrogatory—State what interest you ever had in it, and the circumstances of your having it in your possession.

" 2d Answer—Samuel Snodgrass left the note with me to raise some money on it; I got it discounted on my own responsibility; that is, I agreed to see it paid, and paid it out of his means about the time of its maturity; I had sold some property of his in the meantime."

### EXAMINATION-IN-CHIEF RESUMED.

" 1st Interrogatory—State if you had *had* that land for sale as real estate agent, and if so, how long you had it for David Snodgrass?

" 1st Answer—I had it for sale; I think it was left with me for sale in the spring of 1866 by David Snodgrass; I published it in both the city papers and also in hand-bills, in 1866.

" 2d Interrogatory—At what time did you have your last conversation with David Snodgrass about that land?

" 2d Answer—I do not recollect the last conversation but we had several conversations between the date of the deed and the date of its record—that is from June, 1867, to October of that year.

" 3d Interrogatory—What was the subject of those conversations?

" 3d Answer—The sale of the land. He appeared very anxious to have the land sold.

" 4th Interrogatory—About what time did David Snodgrass leave this country?

" 4th Answer—According to the best information I have, he left either the afternoon of the same day the

deed was recorded, or the next morning after, and I have not seen him since.

1881
Spring
Special Term.

Goshorn's Ex'r
v.
Snodgrass
et al.

" 5th Interrogatory—What did he say about the payment of this note when he talked about selling the land ?

" 5th Answer—I do not recollect anything in particular ; I understood he was going to pay it.

" 6th Interrogatory—Did he know that you had the note in your possession ?

" 6th Answer—Yes, sir, I believe he did.

" 7th Interrogatory—State if he gave any directions to you to pay the note if you should sell the land ?

" 7th Answer—I do not recollect of any particular directions to that effect, but it was understood that the note was to be paid when the land was sold, for the note was in part pay of the purchase-money of the land. This I understood from both the Snodgrasses.

" 8th Interrogatory—State what David Snodgrass said to you about the sale of this land to James L. Delaplain, if anything, before the sale ?

" 8th Answer—He never mentioned it to me.

" 9th Interrogatory—State if he ever mentioned to you any person that he thought might possibly want to buy it.

" 9th Answer—He did ; several.

" 10th Interrogatory—What relation was James L. Delaplain to David Snodgrass ?

" 10th Answer—They were brothers-in-law, and David Snodgrass is a brother of the complainant.

" 11th Interrogatory—State whether land fell or rose from June, 1867, to June, 1868, in Ohio county.

" 11th Answer—Not materially, if any.

" 12th Interrogatory—Did David Snodgrass ever countermand the authority to you to sell this land ?

" 12th Answer—He did not.

" 13th Interrogatory—How and where and from whom did you first learn that this land had been sold.

" 13th answer—I first learned it from Peter Delaplain,

1881
Spring
Special Term.

Goshorn's Ex'r
v.
Snodgrass
et al.

brother of James L. Delaplain, the same day the deed was recorded, at my office door in Wheeling."

These depositions were taken on behalf of Samuel Snodgrass against said Delaplain and others and read in the case at bar by consent of parties. None of the defendants took or filed any depositions on their behalf; all the depositions were taken and filed in behalf of plaintiff.

The appellees in the case at bar have brought before us in this case the original summons against A. J. Clarke, trustee, &c., in the said case of Samuel Snodgrass against David Snodgrass and others dated the 11th day of July, 1868, served on the 11th day of July, 1868, also a copy of the answer of James L. Delaplain, a defendant in the last named case, which is substantially the same as his answer filed in the case at bar, with general replication thereto, also a copy of an order of the court, showing that James L. Delaplain had moved the court on the 24th day of November, 1872, to quash the order of attachment endorsed upon the summons in the last named cause, and that the court overruled the motion, and also a copy of an amended bill filed in said last named cause on April 2, 1872, by the plaintiff therein, which is substantially the same as the last amended bill filed in the case at bar, which I have hereinbefore given.

Upon the petition of defendants, James L. Delaplain, Peter Delaplain, Florence V., his wife, and Samuel S. Jacob, an appeal was allowed them to this Court on the 30th day of March, 1878, from the decrees rendered in the said cause *Goshorn ex'r, &c.,* v. *Snodgrass et al.,* on the 24th day of November, 1871, the 4th day of September, 1874, the 15th day of May, 1875, and the 18th day of April, 1876, respectively; and in this way the cause is now before this Court for review and determination.

*Daniel Lamb,* for appellants, relied on the following authorities:

29 Gratt. 628 ; 52 N. Y. 274 ; 30 Conn. 15 ; 6 Ind. 176 ; 1 Story Eq. §§ 409, 410 ; 2 Lead. Cas. in Eq. 4th ed. pt. 1, pp. 119, 120; 5 Ohio St. 319 ; 3 Metc. (Ky.) 278 ; *Id.* 181 ; 1 Metc. (Ky.) 470 ; 1 Denio 184 ; 65 N. Y. 310 ; 2 Pat. & H. 47 ; 3 Leigh 306 ; 2 U. S. Dig. 1st Series pp. 164, 165, ¶¶ 1176, 1181 ; 10 W. Va. 135 ; 2 H. & M. 315; 18 Gratt. 854; 24 Ark. 235; 1 Metc. (Ky.) 42; 13 Minn. 422; 14 Minn. 125; 19 Wis. 174; 21 Ill. 80; 11 R. I. 424; 7 Barb. 253; 22 How. Pr. R. 272 ; 18 Wend. 611; 14 Wend. 237; 6 Tex. 189; 23 Ohio St. 640; 5 Tannt. 520 ; 1 Crompt. & J. 401 ; 33 Barb. 520; 3 Dan. Chy. Pr. (3d ed.) 1811; 31 Cal. 342, 353; 6 W. Va. 542; 7 Paige 157; 65 N. Y. 584 ; 10 W. Va. 130; *Id.* 316 ; 11 W. Va. 554; 6 Gratt. 364 ; 2 Rob. (old) Pr. 433; 17 Johns. 548; 2 Rand. 247 ; 13 W. Va. 229; Acts 1867 p. 147; 30 Gratt. 724 ; 6 Pet. 716.

*Caldwell & Caldwell,* for appellee, William S. Goshorn, cited the following authorities:

3 Mon. 1; 1 Stockt. 210; Kerr on Fraud 200; *Id.* 384, 385; 51 Ill. 324; 23 How. 187; 1 Stark. Ev. 58; *Id.* 499 ; 22 Pa. St. 183; 4 Rand. 282; *Id.* 304; 2 Rob. (old) Pr. 17; 78 Eng. C. L. 414; 2 Bkcy. Reg. 140, 144; 17 Ia. 503 ; Bump. Fraud. Con. 78 ; Acts 1867, ch. 118, p. 147; Code of Va. p. 648, § 11 ; *Id.* p. 647, § 7; 21 Wend. 317, 319 ; 3 Comst. 45, 46; 18 Wend. 615; 15 Gratt. 60 ; 10 W. Va. 347; *Id.* 87 ; 14 Ves. 426 ; 1 Story Eq. Jur. §§ 400, 400 b.

*D. Peck,* for appellee, Snodgrass, cited the following authorities :

Code 1860 ch. 151, § 11 ; *Id.* §§ 1, 2; Code 1868, ch. 133, § 2; Code 1860, ch. 179, § 2; 13 Gratt. 15; 2 Rand. 384.

HAYMOND, JUDGE, announced the opinion of the Court :

1881<br/>
Spring<br/>
Special Term.<br/>
Goshorn's Ex'r<br/>
v.<br/>
Snodgrass<br/>
<i>et al.</i>

1881
Spring
Special Term.

Goshorn's Ex'r
v.
Snodgrass
et al.

Under the view I take of this case I deem it proper to first consider the question of fraud involved in the sale and conveyance from David Snodgrass to James L. Delaplain. The 2d section of ch. 179, p. 736 of the Code of 1860, which was in force in this State at the commencement of this suit provides, that "a creditor before obtaining a judgment or decree for his claim may institute any suit to avoid a gift, conveyance, assignment or transfer of, or charge upon, the estate of his debtor, which he might institute after obtaining such judgment or decree ; and he may in such suit have all the relief in respect to said estate, which he would be entitled to after obtaining a judgment or decree for the claim, which he may be entitled to recover." This same provision was carried into the Code of this State of 1868, which took effect on the 1st day of April, 1869. See Code of this State of 1868, § 2, ch. 133, p. 631.

The 1st section of ch. 118 of the Code of 1860, p. 565 provides, that "every gift, conveyance, assignment or transfer of, or charge upon any estate, real or personal, every suit commenced, or decree, judgment or execution suffered or obtained, and every bond or other writing given with interest to delay, hinder or defraud creditors, purchasers or other persons, of or from what they are or may be lawfully entitled to, shall, as to such creditors, purchasers or other persons their representatives or assigns, be void. This section shall not affect the title of a purchaser for valuable consideration, unless it appear, that he had notice of the fraudulent intent of his immediate grantor, or of the fraud rendering void the title of such grantor." This section is also carried into the Code of this State of 1868. See 1st section of ch. 74, p. 473, Code of 1868.

The 11th section of chapter 118 of the said Code of 1860 provides, that " the words ' creditors' and ' purchasers' where used in any previous section of this chapter, or in chapter 119, shall not be restricted to the protection of creditors of and purchasers from the grantor,

but shall extend to and embrace all creditors and purchasers, who, but for the deed or writing, would have had title to the property conveyed, or a right to subject it to their debts." This section is also carried into to the Code of this State and constitutes the 9th section of chapter 74 thereof, except that it omits the words "or in chapter 119."

1881
Spring
Special Term.

Goshorn's Ex'r
v.
Snodgrass
et al.

In 1st vol. Story's work on Eq. Jur., § 409, p. 437, it is stated, that "the doctrine, which has been already stated in regard to the effect of notice, is strictly applicable to every purchaser, whose title comes into his hand affected with such notice. But in no manner affects any such title, derived from another person, in whose hands it stood free from any such taint. Thus a purchaser with notice may protect himself by purchasing the title of another bona fide purchaser for valuable consideration without notice; for, otherwise, such bona fide purchaser would not enjoy the full benefit of his own unexceptionable title. Indeed, he would be deprived of the marketable value of such a title; since it would be necessary to have public notoriety given to a prior encumbrance, and no buyer could be found, or none except at a depreciation to the value of the encumbrance. For a similar reason, if a person, who has notice, sells to another, who has no notice, and is a bona fide purchaser for a valuable consideration, the latter may protect his title, although it was affected with equity, arising from notice, in the hands of the person from whom he derived it; for otherwise, no man would be safe in any purchase, but would be liable to have his own title defeated by secret equities, of which he could have no possible means of making a discovery."

In section 410 of the same book the author further says: "This doctrine, in both of its branches has been settled for nearly a century and a half in England; and it arose in a case, in which A. purchased an estate with notice of an encumbrance, and then sold it to B., who had no notice; and B. afterwards sold it to C., who had notice; and the question was, whether the encumbrance

bound the estate in the hands of C.   The then Master of the Rolls thought, that, although the equity of the encumbrance was gone, while the estate was in the hands of B., yet it was revived upon the sale to C.   But the Lord Keeper reversed the decision, and held, that the estate in the hands of C. was discharged of the encumbrance, notwithstanding the notice of A. to C.   This doctrine has ever since been adhered to, as an indispensible muniment of title.   And it is wholly immaterial of what nature the equity is, whether it is a lien, or an encumbrance or a trust, or any other claim; for a *bona fide* purchase of an estate, for a valuable consideration, purges away the equity from the estate in the hands of all persons who may derive title under it, with the exception of the original party, whose conscience stands bound by the violation of his trust and meditated fraud.   But if the estate becomes revested in him, the original equity will re-attach to it in his hands."

One who purchases from a fraudulent grantee, with notice of the fraud and of the invalidity of his title, can acquire no better right than the fraudulent grantee.   He cannot be protected as a *bona fide* purchaser, but must stand in the shoes of his grantor.   *Garland* v. *Rives*, 4 Rand. 282 ; Robinson's (old) Practice 17.   The statute of frauds avoids all conveyances made by the grantor with intent to delay, hinder or defraud creditors. Those conveyances only are excepted, in which the purchaser gives a valuable consideration *and* acts *bona fide*. The valuable consideration alone will not bring the purchaser within the exception.   He must also act *bona fide*. If a creditor take from his debtor a conveyance to secure a debt, and mix with this object that of delaying, hindering or defrauding other creditors, the conveyance will be void.   *Garland* v. *Rives*, 4 Rand. 282 ; *Wright* v. *Hancock & Co.*, 3 Munf. 521; *Lang* v. *Lee*, &c., 3 Rand. 410.

The statute for the prevention of frauds, which has been universally considered as an exposition of the com-

mon law, was intended to avoid deeds contrived and devised fraudulently for the delaying and defrauding of creditors in those cases only, where both parties participated in the fraud. The grantor may intend a fraud, but if the grantee is a fair, *bona fide* and innocent purchaser, his title is not to be affected by the fraud of his grantor. Spencer, Judge, in *Sands* v. *Hildreth*, 14 Johns. 498; Kent, Chancellor, in *Roberts* v. *Anderson*, 3 Johns. Chy. 378; *Bean* v. *Smith et al.*, 2 Mason 252; Rob. (old) Prac, 17.

1881
Spring
Special Term.

Goshorn's Ex'r
v.
Snodgrass
et al.

In the case of *Kaine* v. *Weigley*, 22 Pa. St. (10 Harris) 179, the first branch of the syllabus is: "The proposition, that 'fraud must be proven and not presumed,' is to be understood only as affirming, that a contract honest and lawful on its face must be treated as such, until it is shown to be otherwise by evidence either positive or circumstantial. Fraud may be inferred from facts calculated to establish it." It seems to me that this syllabus announces a correct principle. Judge Black in delivering the opinion of the court in this case at page 182 says: "One who has a *bona fide* debt against an insolvent man, may take property at a fair price in payment of it, without danger of having his title afterwards impeached. But when a person in failing circumstances sells land to one who is not a creditor, his motives are suspicious, for he can, if he pleases, put the money out of reach, and defeat those who are entitled to it. If the vendee knows that such is the vendor's purpose, he must take the consequences in the loss of his title, though he has paid an outside price for it," &c.

Syllabus 2.

Again the same judge at the same page and pages 183 and 184 says: "In the present case it is alleged, that the conveyance was made when both parties knew the vendor to be insolvent; that the grantees were a brother-in-law and a sister of the grantor; that the consideration stated in the deed was less than the value of the land by twenty or twenty-five per cent; that, of the sum, which was said to be the price, only fifty dollars were paid

1881
Spring
Special Term.

Goshorn's Ex'r
v.
Snodgrass
et al.

when the deed was delivered, and that amount was handed to the grantor by his sister after they had gone together in a private room, from whence she returned with the money in her hand. I say these facts are alleged. I do not say they were fully proved, or that if proved, the jury were bound to infer from them any actual dishonesty. But if true, they make out a very serious case, which ought to be submitted with instructions tending to prevent a verdict for the plaintiff, unless the jury should be able to explain the evidence in some way consistently with the fairness of the transaction. It is said that fraud must be proved, and is never to be presumed. This proposition can be admitted only in a qualified and very limited sense. But it is urged at the bar, and sometimes assented to by judges, as if it were a fundamental maxim of the law, universally true, incapable of modification, and open to no exception; whereas it has scarcely extent enough to give it the dignity of a general rule ; and as far as it does go, it is based on a principle which has no more application to frauds than to any other subject of judicial enquiry. It amounts but to this : that a contract, honest and lawful on its face, must be treated as such until it is shown to be otherwise by evidence of some kind, either positive or circumstantial. It is not true that fraud can never be presumed. Presumptions are of two kinds *legal* and *natural*. Allegations of fraud are sometimes supported by one and sometimes by the other, and are seldom, almost never, sustained by that direct and plenary proof which excludes all presumption. A sale of chattels without delivery, or a conveyance of land without consideration, is conclusively presumed to be fraudulent as against creditors, not only without proof of any dishonest intent, but in opposition to the most convincing evidence that the motives and objects of the parties were fair. This is an example of fraud established by mere presumption of law. A natural presumption is a deduction of one fact from another. For

instance : a person deeply indebted, and on the eve of bankruptcy, makes over his property to a near relative, who is known not to have the means of paying for it. From these facts a jury may infer the fact of a fraudulent intent to hinder and delay creditors. A presumption of fraud is thus created which the party, who denies it, must repel by clear evidence, or else stand convicted. When creditors are about to be cheated, it is very uncommon for the perpetrators to proclaim their purpose, and call in witnesses to see it done. A resort to presumptive evidence, therefore, becomes absolutely necessary to protect the rights of honest men from this, as from other invasions. Upon such evidence the highest criminal punishments are inflicted, and the most important rights of property constantly determined. Fraud in the transfer of goods or lands may be shown by the same amount of proof which would establish any other fact in its own nature as likely to exist. In any case the number and cogency of the circumstances, from which guilt is to be inferred, are proportioned to the original improbability of the offence. The frequency of fraud upon creditors, the supposed difficulty of detection, the powerful motives which tempt an insolvent man to commit it, and the plausible casuistry with which it is sometimes reconciled to the consciences even of persons whose previous lives have been without reproach; these are the considerations which prevent us from classing it among the grossly improbable violations of moral duty; and therefore we often presume it from facts which may seem slight. Besides, when a man, who knows himself unable to pay his debts, disposes of his property for a just purpose, he can easily make and produce the clearest evidence of its fairness. If he sells for the benefit of his creditors, he can prove, that he applied the proceeds to their use. It is no hardship upon an honest man to require a reasonable explanation of every suspicious circumstance, and rogues are not entitled to a veto upon the means employed for their

1881
Spring
Special Term.

Goshorn's Ex'r
v.
Snodgrass
et al.

1881
Spring
Special Term.

Goshorn's Ex'r
v.
Snodgrass
et al.

detection. We do not propose to say how much evidence is required to raise a presumption of actual fraud, either in this case or any other. The jury must weigh, on one hand, the facts which are adduced to prove it, and on the other, the nature of the accusation and the improbability of its truth arising from reasons *a priori*, together with the exculpatory facts, and then decide according as they find the preponderance to be. If the reasons *pro* and *con* are so evenly balanced that they can come to no conclusion, they must find the transaction honest, not upon the principle of the criminal law, which gives the benefit of every doubt to the party accused, but because the burden of proof was on the other party at the start; and if he has done no more than create an equilibrium, he has failed to make out his case."

It is perhaps proper, that I should here remark, that in this State a sale of chattels without delivery is not conclusive evidence of fraud, but is only *prima facie* evidence of fraud. If the facts established afford a sufficient and reasonable ground for drawing the inference of fraud, the conclusion, to which the proof tends, must in the absence of explanation or contradiction be adopted. Kerr on Fraud and Mistake, American Notes 384, 385. The motives, with which an act is done, may be, and often are, ascertained and determined by circumstances connected with the transaction and the parties to it. Various facts and circumstances evince sometimes with unerring certainty the hidden purposes of the mind.

Syllabus 3.

"A deduction of fraud" says Kent, "may be made not only from deceptive assertions and false representations, but from facts, incidents, and circumstances, which may be trivial in themselves; but may, in a given case, be often decisive of a fraudulent design." Kerr on Fraud, &c., 385. "A badge of fraud does not constitute fraud itself, but is simply evidence of fraud, a means of establishing a fraudulent intent. It is not necessary, however, in order to condemn a transaction as

Syllabus 4.

fraudulent, that two or more of the marks of a collusive design shall be affixed to it, for all presumption becomes conclusive unless explained" Bump on Fraudulent Conveyances, 78. "Though the proof of fraud rests on the party who alleges it, circumstances may exist to shift the burthen of proof from the party impeaching a transaction on the party upholding it." Same book, 385.

1881
Spring
Special Term.

Goshorn's Ex'r
v.
Snodgrass
et al.

Syllabus 6

In the case of *Bryant et al.* v. *Henry Simonean et al.*, 51 Ill. 324, it was held, that " fraud, like all other facts, may be proved by circumstances, not however by circumstances that merely raise a suspicion ; and when they are so strong as to produce conviction of the truth of the charge, although some doubt may remain, it will be considered as proved. This is believed to be the extent of the rule, that fraud must be proved."

In a case in the United States district court, of Massachusetts, 4 National Bankruptcy Register, 45, Judge Lowell at page 46 says : "I have often decided, that the conveyance of the whole property of a debtor affords a very violent presumption of a fraudulent intent so far as existing creditors are concerned."

Although fraud in fact, even as to an existing creditor after five years, must be shown to impeach the conveyance, it is not required, that the actual or express fraudulent intent appear by direct and positive proof; circumstantial evidence is not only sufficient, but in most cases it is the only kind of evidence that can be adduced. Fraud is to be legally inferred from the facts and circumstances of the case, where these facts and circumstances are such, as to lead a reasonable man to the conclusion, that the conveyance was made with intent to hinder, delay or defraud creditors. *Hunter's ex'rs* v. *Hunter et al.*, 10 W. Va. 321 ; *Lockhard & Ireland* v. *Beckley et al.*, 10 W. Va. 87; *Castle* v. *Bullard*, 23 How. 187.

Although a deed be made for a valuable and adequate consideration, yet if the intent, with which it is made, be dishonest or unlawful, the deed will be deemed fraudu-

Syllabus 5.

97

1881
Spring
Special Term.

Goshorn's Ex'r
v.
Snodgrass
et al.

lent. *Ward, &c.* v. *Trotter, &c.*, 3 Mon. 1, 3 and 4; Kerr on Fraud, &c. 200.

In the case of *Garr* v. *Hill et al.*, 1 Stock. N. J. 210, it was held, that "if a debtor is about to abscond from his creditors, and with this knowledge on the part of the purchaser, and with the view of aiding him to convert his property into funds, so that he may the more readily effect his purpose, he takes a conveyance of the debtor's property, *he participates in the fraud* the debtor contemplates perpetrating, and such conveyance *is void as against creditors.*" The Chancellor in delivering the opinion of the court in this case at page 215 says : "If the agreement was made by James for the purpose of defrauding his creditors, and Wakeman entered into the agreement to aid him in such purpose, the agreement is void, no matter whether Wakeman paid him a full consideration or not. A deed executed for the purpose of defeating creditors, in which purpose the grantee participates, is void, even though a full consideration is paid, &c. See also 1 Story Eq. Jur. § 369, pp. 397 and 398. In the said case in 1 Stock. —, it was also held : " But a debtor in failing circumstances or about to abscond, may legally make a conveyance for the purpose of preferring an honest creditor." See also 1 Story Eq. Jur. § 370, pp. 398 and 399.

If the evidence establishes a *prima facie* case of fraud, or shows that an instrument is false in any material part, the burthen of showing, that the transaction was fair lies upon the party who seeks to uphold it. Kerr on Fraud, &c. 385, 386. In the case of the *Assignees of Braugh, a bankrupt* v. *Farber*, 78 Eng. Com. Law 409, it was asked by Maule, Judge : "Why was not the defendant made a witness?" And Chief Justice Jarvis observed : "I always observe upon the absence of the defendant, where he might, if called, remove an imputation of fraud." Bump in his work on Fraudulent Conveyances at pages 95 and 96 says : "The omission of the grantee to testify or to produce the debtor or any other impor-

1881
Spring
Special Term.

Goshorn's Ex'r
v.
Snodgrass
et al.

tant witness, is the ground for an unfavorable presumption, and frequently exercises an important influence upon the final determination of the question of fraud."

In a case in the United States District Court of Kentucky *In re Ernest Husman* reported in the 2d Bankruptcy Register Judge Ballard in delivering his opinion at 140–144 after remarking, that both Landrath and Husman, grantor and grantee in an alleged fraudulent sale were competent witnesses, but had not testified, says: " Certainly the most charitable must concede, that the whole transaction is surrounded by circumstances of extensive suspicion. And I think it a sound rule, sustained by reason as well as by authority, that when it appears that a party to a suit has in his possession evidence, which he can give to clear up any doubt or to resolve any difficulty, and he does not give it, the presumption is that the evidence, if given, would be in corroboration of that, which has been already given against him. *Clifton* v. *United States*, 4 How. 242."

In the case of *Glenn* v. *Glenn,* 17 Ia. 498, Judge Dillon in delivering the opinion of the court at pp. 502 and 503 says : " Another consideration of much weight is, that notwithstanding the circumstances thus attending the transfers in question seem to require explanation, if any could be given, yet neither the father nor any of the sons or the son-in-law have become witnesses. If they could truthfully have testified to facts showing the *bona fides* of the conveyances in question, the reasonable presumption is, that being competent witnesses they would have done so. Where the circumstances are so suspicious as those above specified the failure by the plaintiff to offer explanatory or rebutting evidence, thus clearly within their power, had it existed, makes strongly against them. *Blatch* v. *Archer,* Cowp. 65, per Lord Mansfield."

A creditor, who takes a conveyance from his debtor to secure his debt, but at the same time inserts provisions in the deed to delay, hinder or defraud other creditors,

comes within the statute of frauds, and the conveyance is void. So likewise, if the grantee be privy to a fraudulent intent on the part of the grantor and takes a deed to secure his own debt with provisions to *delay, hinder* or *defraud* other creditors, the deed will be void, although his only motive was to secure his own debt, and the other provisions were *forced* upon him by the grantor, as the only means of having his own debt secured. Such a grantee will not be considered as a *bona fide* purchaser. *Garland* v. *Rives,* 4 Rand. 282. Under our statute of frauds, as well as the English statute of 13 Eliz. a *bona fide* purchaser for value having no notice of *covin, fraud, collusion,* &c., will be protected. To vitiate a conveyance there must be a *fraudulent design* in the grantor and *notice* of that design in the grantee. Same report; 10th section of the syllabus in *Lockhard & Ireland* v. *Beckley et al.,* 10 W. Va. 88; *Herring et al.* v. *Wickham and wife et al.,* 29 Gratt. 628.

In the case of *Castle* v. *Bullard,* 23 How. 172, decided by Supreme Court of the United States, Judge Clifford in delivering the opinion of the court at page 187 says : " Much of the evidence was of a circumstantial character ; and it is not going too far to say, that some of the circumstances adduced, if taken separately, might well have been excluded. Actions of this description however, where fraud is the essence of the charge, necessarily give rise to a wide range of investigation, for the reason that the intent of the defendant is, more or less, involved in the issue. Experience shows that positive proof of fraudulent acts is not generally to be expected, and for that reason, among others, the law allows a resort to circumstances as the means of ascertaining the truth. Great latitude, says Mr. Starkie, is justly allowed by the law to the reception of indirect or circumstantial evidence, the aid of which is constantly required, not merely for the purpose of remedying the want of direct evidence, but of supplying an invaluable protection against implication. 1 Starkie's Ev. 58. Whenever the necessity arises

1881
Spring
Special Term.

Goshorn's Ex'r
v.
Snodgrass
et al.

for a resort to circumstantial evidence, either from the nature of the enquiry or the failure of direct proof, objections to the testimony on the ground of irrelevancy are not favored, for the reason that the force and effect of circumstantial facts usually and almost necessarily depend upon their connection with each other. Circumstances altogether inconclusive, if separately considered, may by their number and joint operation, especially when corroborated by moral coincidences, be sufficient to constitute conclusive proof."

In the case of *Glenn* v. *Glenn*, 17 Ia. 498, *supra*, Judge Dillon at page 501 says: "From the pleadings and evidence the following facts, most of them being badges or signs of fraud, are satisfactorily shown." He then proceeds to state them numbering them from one to four inclusive, and number three 'as stated by him is as follows: "3. The nature and purposes of the transfer are also evinced by the amount of property conveyed. It comprised all of his estate, or substantially all, *both real and personal.*" See on this point Bump on Fraudulent Conveyances, 79, 80.

Here I deem it proper to remark, that the defendants and each of them have failed to take the deposition of defendants, David Snodgrass or James L. Delaplain, or either of thtm, who were competent witnesses to explain the transaction between themselves and all the circumstances and facts in the case, which need explanation to sustain the sale from said David Snodgrass and to said James L. Delaplain as an honest *bona fide* sale. It may be remarked also, that the said David Snodgrass and James L. Delaplain are brothers-in-law. Bump says in his said work, that " wherever this confidential relation exists, the parties are held to a fuller and stricter proof of the consideration." He also mentions other confidential relations to which the same effect is given. Bump on Fraudulent Conveyances 96, 97 and 98.

Having stated fully the pleadings and evidence in the case I deem it unnecessary here to enter into an analysis

1881
Spring
Special Term.

Goshorn's Ex'r
v.
Snodgrass
et al.

of the evidence and an argument thereon ; but I feel, that I should in this case content myself with stating my conclusions from the pleadings and evidence as to the character and purposes of the sale and conveyance of the land in the bill mentioned by David Snodgrass and wife to James L. Delaplain. Upon careful examination of the pleadings and evidence in the cause my conclusion is, that the said sale and conveyance of said land by David Snodgrass and wife to James' L. Delaplain was made by the said David Snodgrass with the intent and purpose on his part to delay, hinder or defraud the creditors of the said David Snodgrass, and that the said James L. Delaplain at the time of said sale and conveyance of the said David Snodgrass and wife of said land to him had notice of such fraudulent intent and purpose of the said David Snodgrass.

I will now proceed to enquire if the defendant, Florence V. Delaplain, had notice of said fraud. It will be seen, that the release of David Snodgrass of the trust-deed upon the land to secure the negotiable notes therein mentioned from said James L. Delaplain to said David Snodgrass, (neither of which notes according to the face of said deed of trust were then due) was acknowledged the 30th day of May, 1868, (there is no other date to it) and the said bond of indemnity from James L. Delaplain and his surety James Delaplain to Samuel S. Jacob, trustee for said Florence V. Delaplain, is also dated the 30th day of May, 1868, and said deed of release and bond of indemnity were acknowledged on the day and year last aforesaid before the same notary public in the State of Delaware. The said deed of release, it appears, was admitted to record on the 11th day of June, 1868. The deed from James L. Delaplain and wife to Samuel S. Jacobs, trustee &c., as we have seen, is dated the 7th day of April, 1868, was acknowledged on the 16th day of April, 1868, and was admitted to record on the 22d day of June, 1868, nine days after this suit was brought and the attachment levied ; and the said deed of trust from Peter Delaplain and

1881
Spring
Special Term.

Goshorn's Ex'r
v.
Snodgrass
et al.

Florence V., his wife, and said Samuel S. Jacob as trustee, &c., to A. J. Clark, trustee, is also dated the 7th day of April, 1868, and was acknowledged and admitted to record on the 11th day of June, 1868, the same day said deed of release was admitted to record, two days before this suit was commenced. The first named deed of conveyance was acknowledged in Delaware, and the deed of trust before the recorder of Ohio county.

It is manifest from the evidence of James L. Delaplain, that the said deed of conveyance was not accepted by said Florence V. Delaplain at the date of the said deed of conveyance or at the date of its acknowledgment nor. indeed until after the execution and delivery of said bond of indemnity ; for the said James L. Delaplain says in his deposition, that the said Florence V. Delaplain was not willing to accept the title without this bond. When said bond was received and the deed of conveyance accepted does not distinctly appear. It clearly appears, that it was after the 30th of May, 1868, and may have been after the commencement of this suit, for aught that appears in this case. It will be seen, that the said suit of *Snodgrass* v. *Snodgrass et al.*, was commenced the 13th day of November, 1867, and the bill therein filed at January rules, 1868, and that one of the principal objects of the suit and bill was to set aside the said deed of conveyance from David Snodgrass and wife to said James L. Delaplain, because it was made, as therein alleged, to defraud the creditors of said David Snodgrass. The bill is very similar in its allegations and charges to the bill in the case at bar. We see, that the suit, bill and attachment of said Samuel Snodgrass was pending in the circuit court of Ohio county on the said 7th day of April, 1868, the 30th of May of the same year, and the 22d of June of same year and afterwards. The case of *Hill, assignee,* v. *David Snodgrass* in the commissioner's report mentioned, it seems from the said report, was a judgment at law, as I infer from said report. It does not appear, that there were any other cases than the

two last named pending against David Snodgrass either at law or equity with or without attachment or otherwise on the 7th of April, 1868, or the 30th day of May of the same year.

Now the condition of said bond of indemnity recites, that whereas the said James L. Delaplain has sold and conveyed certain property in Ohio county, West Virginia, to the said Samuel S. Jacob, trustee for Florence V. Delaplain ; and whereas there have been certain attachments at law and in chancery levied upon the said property of certain creditors or alleged creditors of David Snodgrass ; and whereas the said suits and actions are now pending and undetermined : Now, therefore, if the said James L. Delaplain shall indemnify and save harmless the said Samuel S. Jacob, trustee for Florence V. Delaplain, against any judgment and decree, that may be rendered against the said real estate in the said suits or actions, and against all loss expense or damages in any manner incurred or to be incurred in defence of the same, or in any manner incidental thereto, then this obligation to be void, otherwise to remain in full force and effect."

Now to what suits and actions does or can the said bond of indemnity refer as pending ? As before remarked, it does not appear by this record, that there were any other suits than the two last named pending on the 30th of May, 1868, or the 7th day of April, 1868; and the penalty of the bond, which is $2,000.00, is sufficient to cover the recovery in each and both of said cases. If in fact there were suits or actions at law or equity pending at the date of said bond of indemnity other than the two before named, and they were referred to in said bond, and not the two before named nor either of them, the defendants could easily have shown that fact. But, as before stated, no such fact appears or is shown.

Under this state of facts and the whole evidence bearing on the question I feel bound to conclude, that said

1881
Spring
Special Term.

Goshorn's Ex'r
v.
Snodgrass
et al.

bond of indemnity was meant and intended to refer to the said suit in chancery of said *Samuel Snodgrass* v. *David Snodgrass et al.* and the attachment therein as one of the cases therein referred to ; and for the same reasons, in the absence of explanatory facts and others, which might have been proven, if they existed, I feel bound to conclude, that the defendant, Florence V. Delaplain, at the time she purchased said tract of land and received and accepted the said deed therefor, had notice, that the said conveyance from David Snodgrass and wife to said James L. Delaplain for the land in the bill mentioned was made to hinder, delay or defraud the creditors of the said David Snodgrass, and that therefore the said deed of conveyance from said James L. Delaplain and wife to said Samuel S. Jacob, as trustee for said Florence V. Delaplain, is void, as to the creditors of said David Snodgrass.

Thus far I have said nothing as to the validity of the attachment issued in this cause, and as to whether the circuit court erred in refusing to quash the said attachment or not, because I am of opinion, that the court had jurisdiction of this cause without an attachment, because of the fraud alleged in the bill ; that the jurisdiction of the court in the case does not depend solely upon the attachment and levy thereof; that the case as made by the bills shows sufficient equity as to matter of fraud to give jurisdiction to a court of equity to set aside said sales and conveyances of the land in the bills mentioned for fraud as to the creditors of said David Snodgrass. But without now deciding the point I am free to say, that the inclinations of my mind at present are, that the affidavit is sufficient to authorize the order of attachment under the act of the Legislature of February 27, 1867, and the 11th section of the Code of Virginia of 1860.

I am of opinion, that the appeal prayed and granted in this case does not bring with it for review and determination the decree of the circuit court of Ohio county rendered in the said cause of Samuel Snodgrass against

David Snodgrass and others on the 4th day of September, 1874. The case is wholly unlike the case of *Anderson* v. *De Soer*, 6 Gratt. 364. If the appellants had desired this Court to review and pass upon the correctness of the last named decree, they should have petitioned for an appeal therefrom in that case.

For the foregoing reasons there is no error in the said decrees appealed from in this case; and the same must therefore be affirmed; and the appellants must pay to the appellee, William S. Goshorn, executor of John Goshorn, deceased, $30.00 damages and his costs about the defence of the appeal in this cause in this Court expended; and this cause is remanded to the circuit court of Ohio county for such further proceedings to be had, as are according to the rules and principles governing courts of equity.

THE OTHER JUDGES CONCURRED.

DECREES AFFIRMED.    CAUSE REMANDED.